ARLT, Respondent, v. LANGLEY, et al, Appellants.

(227 N. W. 469.)

(File No. 6548. Opinion filed November 19, 1929.)

*Gardner & Churchill,* of Huron, and *George E. Flavin,* of Rapid City, for Appellants.

*Buell, Denu & Philip* and *H. F. Fellows,* all of Rapid City, for Respondent.

FULLER, C. This appeal deals with certain machinery and equipment used in the business of a creamery and ice cream manufactory. Plaintiff Arlt was the owner of the building in Rapid City devoted by him to that business, and defendants Harriett

Haines Langley and John C. Haines, a corporation, herein respectively referred to as Langley or Haines, were the holders of a real estate mortgage thereon. Whether the machinery and equipment were fixtures or appurtenances of the real estate, passing to defendants with title to the building on foreclosure of their mortgage, is the primary question of fact which was tried below and presented here by defendants' appeal from an adverse decision.

The mortgage was given by the plaintiff, Arlt, to the defendant Haines on July 2, 1920, and recorded July 7th. It covered the real estate above mentioned by description of lots and block "with all buildings and appurtenances thereon." In February, 1924, a default decree in foreclosure of the mortgage was entered in favor of the mortgagee and against the mortgagor, Arlt, and others. Therein the mortgaged property was described as in the mortgage. Title to the real estate acquired on the foreclosure later passed to defendant Langley. She also claimed to have acquired title to the property by sheriff's deed, on foreclosure of a mechanic's lien, dated June 24, 1924, after which time the premises were occupied by plaintiff, Arlt, the mortgagor, under lease from her. About March 13, 1926, the building and machinery and equipment were sold to the Fairmont Creamery Company. At that point this controversy took form. The defendants and the plaintiff joined in a bill of sale covering the items here in dispute, and by contract agreed that the sum of $12,000, as the proceeds of the sale, should be deposited with the Pennington County Bank, "there to remain until the title and ownership of said property is and shall be determined as between the parties hereto and that upon such determination each of the parties shall receive from the said money so deposited the value of such personal property as set forth in Exhibit A."

To this contract there was attached an exhibit describing thirty-six articles of property with the value stated opposite each article, the descriptions of which articles were as follows: 1 churn; 22 Friday boxes; 1 churn strainer; 1 Toledo platform.; 1 Jensen vat 200 gal.; 1 Jensen vat 300 gal.; 1 Friday printer complete; 1 Toledo print scale; 1 12-bottle electric tester; 1 Victor starter can (old); 1 12-bottle Troemmer balance; 17½ H. P. motor; 200 (app.) 10-gal. cream cans; 2 Davis-Watkins freezers; 1 size 1 vicolizer; I DeRaef ice cream test scale; 1 tubular cooler; 2 ice cream mix cans; 1 ice cream crusher (installed); 600 5-gal. tubs

and cans, inc. iceless packers; 100 2 and 3 gal. packers and 7 cans; 50 1-gal. tubs and packers; misc. brick wells, molds, etc.; 1 12-ton York ice machine, inc. all coils and motor; 1 ice tank and 49 cans misc.; 1 ice crusher; 1 buttermilk tank; 1 Reo speed wagon; 1 ice cream can washer; 25 milk bottle cases; 1 Burroughs adding machine; 1 typewriter and desk; 1 cast iron safe; 1 bookkeeper's desk; misc. items, inc. files, office desk, and other equipment.

Thereafter, on the same day when the contract aforesaid was executed, this action was commenced by Arlt as plaintiff under a complaint in the form or action of replevin. It alleged that plaintiff was and had been the owner of the property, described as above, and that the defendants, the appellants here, wrongfully retained and refused to deliver the same to plaintiff. By answer, the defendants disputed the present or past ownership of the property in plaintiff, pleaded the fact of the sale of the items to the Fairmont Creamery Company, and the deposit of the proceeds of the sale as above stated, and pleaded at length the contract above mentioned. By counterclaim the defendants alleged ownership of the real estate, described by lots and block, "together with all buildings and appurtenances situated thereon and used in connection therewith and all the appurtenances, machinery, tools, equipment, supplies and property of every character used in connection with and appurtenant to that certain business known and designated as a creamery business * * * as conducted in said building by the plaintiff * * * prior to the 12th day of March, 1926 * * * including each and every item and description of property listed and described in Exhibit A." The said exhibit was identical with a list or description of the items as attached to the complaint and the contract above mentioned.

The counterclaim also set forth the fact of the sale of the property and the deposit of the proceeds of sale, alleged that the plaintiff had no right or title in or to the property or the fund of $12,000, and declared that the counterclaim was brought for the purpose of determining the adverse claim of plaintiff to the real property and to the property appurtenant thereto, and for the purpose of having the respective rights and interest of the plaintiff and the defendants in the fund and the sum of $12,000 determined. Prayer for relief, in the said counterclaim, conforms to these allegations, including a demand that the defendants be adjudged the

owners and entitled to the possession of the real property and the property appurtenant thereto, and entitled to the possession of said sum of $12,000. The counterclaim is in the form of a complaint in an action to quiet title to real estate, and calls upon the plaintiff to set forth his title or claim to the same; the articles of property above described being treated as a part of the real estate by the pleading. To this counterclaim plaintiff replied by disclaimer of any interest in the real property mentioned in the answer, and by his reply the plaintiff reasserted his claim of ownership to the property described in the complaint as personal property.

The defendants then demurred to the reply, and the demurrer. was overruled. Plaintiff, as respondent here, says the ruling on this demurrer may not be considered on appeal, for the reason that it was not specified as an error on the motion for new trial. But the appeal is from the judgment as well as from the order overruling motion for new trial. On appeal from judgment it is well established that an error patent on the face of the judgment roll may be considered such as a ruling on demurrer. In the consideration of this question we will treat the pleading of defendants, consistently with their contention, as a counterclaim to quiet title to real estate. The question therefore is: Where a counterclaim is for the quieting of title to real estate in the statutory form of a complaint to quiet title, is a reply of plaintiff thereto sufficient which fails to "set forth fully and particularly the origin, nature and extent" of his claim to the property, according to the demand in the prayer for relief of the pleading to which that reply is an answer? Without considering whether such an objection should be taken by demurrer or motion, and assuming that, in the ordinary case, a reply to a counterclaim to quiet title (like an answer to a complaint for such purpose) should fully disclose the source and extent of the title and interest which the answering party claims, that proposition is without relevant application here.

The substantial issue between the parties was whether certain property was, or had been, in fact a part of the real property; the circumstance of ownership in one or the other party being dependent upon that basic question. By treating these articles of machinery and equipment as a part of the real estate for the mere purpose of pleading and form of pleading, the counterclaimants

could not compel the plaintiff to follow their suit and thereby concede even indirectly that the machinery and equipment constituted fixtures or appurtenances to the real estate. The reply, therefore, which, with a general denial, merely reaffirmed the plaintiff's claim to ownership of the articles as personal property, was proper and sufficient.

By the pleadings and by the opening statement of the plaintiff to the jury it appears to have been conceded that the articles described in the complaint were not in the possession of the defendants at the time of the commencement of the action; that they had been sold, and the sum of $12,000 as the proceeds of sale deposited in bank as above recited. For that reason defendants moved for the direction of verdict, and on this appeal they maintain that plaintiff's cause, as alleged, has wholly failed. As made at the time of plaintiff's opening statement, and before plaintiff had rested his case, this motion could not have been properly granted. But, as a similar motion was made at the conclusion of the trial, the subject will be considered at this point. Every fact alleged in the complaint was conclusively refuted, except the allegation of ownership of the property in the plaintiff. We know of no cause of action which may be expressed by a naked allegation of ownership. Although the complaint is purely in replevin, the plaintiff admitted that the defendants did not have possession of the property described in the complaint at the time of the commencement of the action or thereafter. Had plaintiff brought an action to recover or compel the payment of the sum of money above mentioned, and to that end had alleged the fact of sale of the property and of the execution of the contract and of ownership in the plaintiff at the time of the making of the contract, the situation would have been different. But, aside from issues created by complaint and answer, the action was subject to trial, verdict, and decision on the issues created by the counterclaim and reply. Hence a verdict could not properly be directed for defendants "on all the issues" according to defendants' motion; for that motion was based on the mere fact the defendants were not in possession of the articles described in the complaint at the time the action was commenced.

At the proper time the defendants moved the court to place the cause for trial on the court calendar as a case in equity. The refusal of the court to grant this motion and its submission of

the case to a jury is assigned as error. In 2 Bancrofts, Code Practice and Remedies, § 1107, it is well declared that:

"Whether an action is legal or equitable must be determined by the real, meritorious controversy between the parties. Mere characterizations will be disregarded, and the courts should look beyond the form in which the action is brought. As a matter of practice, the court looks to the ultimate and entire relief sought, as presented by the pleadings, including the complaint, answer, cross-complaint and prayer for relief."

The right of the defendants, by counterclaim, to obtain a decree for the quieting of title to real estate was overcome by the identical circumstances which rendered futile the attempt of plaintiff to maintain an action in replevin. The counterclaim, as we have seen, alleged that this property had been sold under a bill of sale to a third person, and that both parties had joined in a bill of sale thereto. There was no issue whatever as to ownership of the real estate proper, and all of the pleadings united to present a controversy over machinery and equipment. Assuming those items of property may previously have been a part of or appurtenant to the real estate, the defendants were confessedly without a present right to obtain a decree that the property was a part of the real estate, and that they were the owners of the same as real estate, at the time of filing the counterclaim. Of that fact the defendants seemed to have been conscious in the preparation of their counterclaim, which repeatedly refers to the proceeds of the sale of the property, and which calls for a determination of the rights of the parties in those proceeds. If we look to the meritorious controversy between the parties and to the ultimate and entire relief which was sought, we must hold that the counterclaim was for the recovery of the sum of $12,000; that the ultimate question involved was the right of either party to receive that money according to the contract, which right, as a matter of proof, was dependent on the fact of ownership of the articles above described at a time prior to the commencement of the action, viz., when the contract was made. In this observation we are not considering other forms of action which might have been commenced, but attention is directed to this counterclaim as written. As this motion was made before the opening of trial, the court may have considered that plaintiff had stated a cause of action for replevin of personal property, and that plaintiff

was entitled to at least attempt to establish the allegations of his complaint before a jury. But, in this case, the reply amounts to an admission of the contract for sale of the property. The trial court was thus furnished a reason for a particular consideration of defendants' counterclaim, rather than the complaint, in the determination of the question whether the action should be considered at law or in equity. In our view of this subject, the defendants, by their pleading, refuted their alleged right to proceed in equity for the quieting of title to real estate. Rev. Code 1919, § 2492, provides in part that:

"An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived."

Viewed in the light of this statute, with attention given to the particular language of this contract, as it provides for the right of either party to receive the money, we consider that the defendants' counterclaim and the reply thereto presented an issue of fact for the recovery of money only. Appellants argue that the deposit of the money in bank created a trust, and we are cited to the case of Minneapolis Threshing Machine Co. v. Calhoun, 37 S.D. 542, 159 N. W. 127. The enforcement of a trust is the exclusive province of equity. But there was no trust here. No fiduciary relation was created with the bank. It was not obligated to perform any duty other than that of any bank in which a deposit is made in an ordinary way. The bailment or the deposit of this money was according to the joint act of plaintiff and defendants, and the same was presumably subject to withdrawal by their joint act or check. The bank became an ordinary debtor. Plaintiff and defendants contracted in effect that, according to his successful proof of ownership of the several articles above described, as that ownership existed at the time of the contract, either party should "receive payment" of the money deposited. There is no merit in the contention that a trust relation was created.

We may add that whether the remedy sought by a litigant in any case is for consideration of the court or jury must usually be controlled by the character of title or right asserted by the party. The claim to ownership of this deposit in bank in this case was plainly the assertion of a legal title, and no equitable issues were involved or submitted to the jury. Consistent with that

fact is the prayer for relief in the counterclaim, that defendants be adjudged entitled to possession of the sum of $12,000. The denial of defendants' motion for trial by the court was not erroneous.

In this case there is no substantial controversy over the general rule that, between a mortgagor and mortgagee, the following elements are necessary to make a chattel a part of the realty: (1) Actual or constructive annexation of the chattel to the realty or to something appurtenant thereto; (2) appropriation of the chattel to the use or purposes of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the chattel a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purposes or use for which the annexation has been made. Clearly the intention of the parties as evidenced by their statements and conduct with respect to the property is an important element for consideration in a determination of the question whether the property should be considered as fixtures and appurtenances of the real estate. Appellants moved for a directed verdict, which, to our mind, was properly overruled, as the evidence was extremely conflicting, and there was no undisputed proof of any fact which would forbid a verdict for plaintiff. Elaborate exceptions were taken to the instructions of the trial court, a reproduction and discussion of which would unreasonably prolong this opinion. In our view, the instructions fairly and accurately presented the issues of fact to the jury, and we perceive nothing therein to support the claim that substantial prejudice was suffered by defendants.

It appears that the plaintiff had been engaged in the creamery business in Rapid City since the year 1919. His first location was in a building purchased from one Amundson in that year. The appellant Haines held a mortgage on this property for $6,500. In 1920 the plaintiff, Arlt, arranged with Haines for the purchase of the lots here involved as a new location for his business, upon which lots he proposed to erect a building. The purchase was made by plaintiff and the Rapid City Bottling Works with the intention that one-half of the new building should be occupied by each party, one for the business of the bottling works and the other for a creamery and ice cream manufactory. The lots

were purchased for $8,000. To cover that sum and an additional loan from Haines to plaintiff and to the proprietor of the bottling works, a mortgage of $16,000 on the lots thus purchased was executed. When the new mortgage was executed, the sum of $2,500 was deducted from the amount of the old mortgage which Haines held on the Amundson property, formerly occupied by plaintiff, and that sum was allocated against the new location, and made to comprise a part of the new $16,000 mortgage above mentioned. This was done, according to defendants, because of the removal of machinery and equipment from the old to the new location, and the consequent impairment of defendants' mortgage security on the old location.

Before the execution of the $16,000 mortgage, according to plaintiff's testimony, he conversed with Haines to the effect that more money would be required for the building; that the plaintiff could obtain additional money from his father, but would be obliged to give a mortgage on the machinery and equipment to his father as security. To this plan or intention, plaintiff testified, Haines expressed himself as agreeable. After this conversation, the plaintiff joined with the Rapid City Bottling Works in the execution of the $16,000 mortgage; and thereafter the plaintiff proceeded to obtain moneys from his father to the extent of $14,000, which money was used in the building.

Some time after the execution of the real estate mortgage to Haines, a chattel mortgage to the father of plaintiff was by the plaintiff executed and filed for record. At the time of the sale of the property to the Fairmont Creamery Company, the chattel mortgage of plaintiff to his father was released, plaintiff testified, to permit the sale to be made. The introduction and receipt of this chattel mortgage in evidence over the objections of defendants is assigned as error, and it is argued that this proof on the part of plaintiff was self-serving. In view of the testimony that, according to agreement of the parties, such a mortgage was to be given, the proof, if not entirely legitimate, was harmless so far as defendants are concerned. The action was not brought by plaintiff's father, and the proof was not offered to establish rights in him as mortgagee. The evidence as introduced in this case amounted to a showing that the plaintiff treated the property as personal property in a certain transaction because the defendants, before taking their

real estate mortgage, had so agreed. Although mere proof of the execution of a chattel mortgage upon the machinery and equipment by the plaintiff without the knowledge of defendants would be said to be self-serving and incompetent, proof that plaintiff gave such a mortgage in pursuance of a contract with the defendant Haines was not objectionable as self-serving and incompetent.

Over the objections of defendants, the plaintiff offered, and there were received in evidence, the records of the assessment against the plaintiff of the creamery machinery and equipment for the purpose of taxation in the years 1921 to 1925, inclusive. The assessment was against the Rapid City Creamery, in which name the plaintiff conducted business, and the proof included receipts for the payment of the taxes as regularly made by him. This evidence, the defendants maintain, was self-serving, and its admission prejudicial. It appears, however, that the defendant Langley claimed in the trial below to have become the owner of the town lots and building and owner of the property here in dispute, as fixtures and appurtenances, by the sheriff's deed on a certain foreclosure of a mechanic's lien against the lots as early as June 24, 1924. Her agent Haines leased the real estate to plaintiff by letter on that date, and claimed at the trial below that plaintiff then became the tenant of the defendant Langley of the property here in dispute as well as tenant of the realty proper.

As the defendants thus claim to have been the owners of the property described in the complaint for a part of the time covered by the plaintiff's proof of tax payments, it was competent for the plaintiff to establish any fact which directly or by inference might appear to be inconsistent with the defendants' claim or cast any doubt upon the testimony of the defendants as to their intention or belief concerning their ownership of the property. The defendants point out that, inasmuch as they at all times considered and treated the articles in dispute as fixtures and appurtenances to real estate, they were not under any obligation to ascertain whether some other person was making payment of taxes assessed against the property as personal property; that defendants may not be considered bound by the error of the taxing officers in the listing and taxation of the property as personal property. This contention would be invincible if all the property involved in this action—and covered by the proof of the payment of taxes on the part of plain-

tiff—could reasonably be considered or claimed by the defendants to have been a part of the real estate. Without undertaking a discussion of the facts pertinent to each article here involved, it is sufficient to say that we have been cited to no authority, and a painstaking research has revealed the statement of no principle, according to which the defendants could have reasonably considered office furniture, such as an adding machine, typewriter, desk, safe, and the like, to be fixtures or appurtenances to real estate, or, to use the language of defendants' counterclaim, "appurtenant to that certain business known and designated as the creamery business." There was certainly no special, peculiar, or particular adaptation of these articles to that particular business, and, while a detailed description of the specific articles covered by the tax record does not appear, it is to be inferred, that the above-mentioned articles and other items of similar character were taxed, and that the taxes thereon were paid by plaintiff along with taxes upon those articles of equipment which were of great weight and were affixed to the real property. In other words, the defendants claim to have been the owners of numerous loose and moveable items, including office furniture, as well as owners of other articles hereinbefore described. If they were the owners of this property, as they claimed, it was their duty under the tax laws to return the property for taxation.

Proof that they took no steps in this behalf, and gave no attention to the question whether the property was being taxed, and whether any other person was paying the taxes, would, in some degree, tend to cast a doubt upon their claim or testimony that they believed themselves to have been the owners of the property. The argument that defendants considered the property to be a part of the real estate, and that, therefore, there was no reason why they should give any attention to the taxation of the property as personal, may best be tested by the supposition that they had testified to this effect on the stand. Indeed the witness, Haines, did testify that he did not know that plaintiff, Arlt, was paying taxes on the property for six years. Certainly the testimony of no witness could be accepted as conclusive and as free from doubt which expressed directly or indirectly his assumption that all of the articles hereinbefore described were being taxed, if at all, *as real estate*.

The plaintiff's testimony that he returned the property for the

purposes of taxation as personal property, and that he paid the tax thereon, tends to establish that the defendants were not returning any of the articles above described as personal property for the purposes of taxation thereof; or causing the articles to be included by the taxing officials as part of the realty for the purpose of taxation. The inference that defendants were inactive in this regard, and that they were ignoring the matter of·taxation, tends to discredit the position they took at the trial, i. e., that they were, and for a considerable time had considered themselves to be, the owners of all of the said property, including ordinary office furniture. The articles involved in this controversy were essentially and originally chattels. Many of the articles were of such character that defendants were bound to know they would be assessed for the purpose of taxation against some one *as personal property*, notwithstanding the effect *between the parties* of facts which might make those articles part of the realty. The admission of proof of the tax records and payment of taxes on the property by plaintiff was proper in so far as the proof covered the time while defendants, according to their claim at the trial, were claiming ownership.

The evidence as it pertains to previous years was not material or competent, but its admission was harmless. In view of the whole record, we may not reasonably consider appellants to have been prejudiced by its admission. From the mere fact of error in a ruling of the trial court, it will not be presumed on appeal that appellant was prejudiced by the ruling. Where evidence has been improperly admitted, the whole record will be considered to determine whether the admitted proof was of such a character as to naturally or probably produce or contribute to a wrong result. As proof of the return of the property for taxation as personal property by plaintiff was competent as the same relates to part of the time covered by the proof, we are not indubitably satisfied that defendants were substantially injured by the cumulative and immaterial proof of additional and previous payments of taxes as made by plaintiff.

 The defendants contend, and by appropriate procedure they raised the question below, that their rights to the property here involved were conclusively established against plaintiff by the fact of the judgment in foreclosure. It has been seen that the mortgage upon which defendants relied described the particular lots

"with all buildings and appurtenances situated thereon." In their complaint in the foreclosure action, which went to judgment in 1924, they described the property as above. The decree of foreclosure followed the description as it appeared in the mortgage. But it does not appear in the pleadings, findings, decree, report of foreclosure sale, or otherwise, that any of the property involved in this action was specifically referred to in the foreclosure proceedings. In short, the defendants in this action acquired by their foreclosure proceedings exactly the property which was covered by their mortgage, being the particular lots and the buildings and appurtenances situated thereon. What articles, if any, constituted appurtenances or fixtures, the foreclosure decision does not purport to decide. By the foreclosure defendants became owners of the lots, building, and the fixtures and appurtenances thereon which had previously been covered by their mortgage, and no further or different effect may be given the foreclosure as a matter of proof in this case. The question as to whether any article here involved was a fixture or appurtenant to real estate at the time of the making of the mortgage, or at the time of its foreclosure, remained a question for determination in the instant action.

The defendants point out that, in the findings of fact entered in the foreclosure action, it was there recited that the premises described in the complaint "will sell to better advantage in one parcel than in separate parcels, the one building with the machinery therein covering all of the several lots described in the complaint and mortgage." Defendant maintains that by this language the court in the foreclosure suit intended to adjudicate that the mortgage covered the machinery in the building. The decree, however, purports only to adjudicate the defendant's right of foreclosure upon the property as it is described in the mortgage. It follows the language and the prayer for relief in the complaint. The decree was entered on default of the mortgagors, who were served as defendants. The findings therefore should be considered in connection with the allegations of and the prayer for relief in the complaint and the recitals of the judgment. From the entire record of the foreclosure action it is apparent that the court did not intend by parenthetical and indefinite language in the findings, which had reference only to the manner of sale, to extend its adjudication beyond the prayer for relief in the foreclosure com-

plaint or beyond the language of the foreclosure decree. A default judgment in foreclosure directing a sale of certain town lots and the building and appurtenances thereon situated is not a determination of what particular articles were in fact appurtenances or fixtures.

Notwithstanding that the mortgage described the real estate together with the "building and appurtenances thereon situated," and notwithstanding the decree of foreclosure above mentioned, the plaintiff undertook to prove, by his own testimony, that the phrase last above quoted was not in the mortgage at the time he executed the same. To this testimony the defendants vigorously objected, for the reason that the proof was not binding upon defendants and not the best evidence; that it tended to vary the terms of the written mortgage; and because the mortgage had been foreclosed, and that the subject was no longer open to question; that the plaintiff was estopped to dispute the mortgage and its adjudication. Thereupon plaintiff's counsel declared to the record that plaintiff was without any intention of repudiating the mortgage or of having its terms altered or changed, or to raise any rights on the fact that the mortgage had been changed after execution.

The plaintiff was then permitted to testify that the clause with respect to appurtenances was not in the mortgage when he signed the same. In our view, this evidence was not objectionable, for the reason stated by defendants. Without question the plaintiff was bound by the legal force and effect of the decree in the foreclosure action, in which action no appearance was made by the mortgagors and no question raised as to the alteration of the instrument. Nevertheless the intention of the parties in the instant case with respect to these items of property was a subject of material inquiry. The defendants maintained that the articles were fixtures or appurtenances. It is to be admitted that the inclusion of a reference to appurtenances in the mortgage did not add to the rights of the mortgagee; that title to appurtenances would pass by a mortgage of real estate and the foreclosure thereof. But, if the defendant Haines, as mortgagee, had inserted, or caused to be inserted, a reference to appurtenances in the mortgage after the same had been executed and delivered to him, that evidence would tend to show that he believed he had no lien upon whatever articles

he believed were appurtenances at the time the mortgage was executed. The plaintiff had testified as to his conversations with Haines, before the making of the real estate mortgage, in which conversation an agreement had been reached for the execution of a mortgage upon the machinery and equipment by plaintiff to his father. That evidence went to show that defendants, before taking their real estate mortgage, looked upon and treated the machinery and equipment as personal property, because they were allowing plaintiff to deal with the property as personal property.

The evidence now under discussion had a material bearing with respect to the belief of defendants that a mortgage on the real estate proper would not cover the items here in dispute. If plaintiff had directly and affirmatively shown that the mortgagee, Haines, inserted the word "appurtenances" in the mortgage after its execution, we believe such evidence would have been material and competent, and that it could have been offered by plaintiff without any appearance of an attempt on his part to dispute the force and effect of the mortgage and the decree of foreclosure. Such evidence would go to show that the mortgagee, to whom the mortgage had been delivered without the word "appurtenances" therein, doubted his own right to a lien upon the machinery and equipment at the time the mortgage was made, at which time, according to plaintiff's testimony, an understanding had been reached that the property should be covered by a mortgage to the plaintiff's father. Evidence which tended to establish the fact of a change in the mortgage by the mortgagee was material and competent for the same reason that direct proof of the fact of such change in the mortgage would have been lawful.

Other matters are discussed in, and presented by, the assignments of error, but we consider the foregoing to be reasonably comprehensive in a disposition of all questions of importance. The case involves a voluminous record of fact; it was hotly contested, and has been ably presented by appellants here. Some rulings below may not have been in strict and exact conformity with all technical rules of procedure, trial, or evidence. But, on the whole, we are impressed with the belief that appellants have not been harmed by any act or ruling of the trial court, and that, if there is fault in the decision below, it is the result of the opinion of the jury with respect to the facts.

The judgment and order appealed from are affirmed.

POLLEY and BURCH, JJ., concur.

SHERWOOD, P. J., and BROWN, J., concur in result.

CAMPBELL, J., dissents.