ROSEBUD SIOUX TRIBE,
Plaintiff and Appellee,

v.

Michael STRAIN, Defendant
and Appellant.

No. 15929.

Supreme Court of South Dakota.

Argued May 24, 1988.

Decided Nov. 23, 1988.

Rehearing Denied Dec. 29, 1988.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, J.M. Grossenburg of Day & Grossenburg, Winner, for plaintiff and appellee.

Ronald E. Clabaugh of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

DOBBERPUHL, Circuit Judge.

Michael Strain (Strain) appeals from a judgment impressing a constructive trust upon funds he received while acting as attorney for the Rosebud Sioux Tribe (Rosebud) and the Tribal Land Enterprise (TLE). We affirm.

## PROCEDURAL HISTORY

On November 19, 1981, Rosebud filed its complaint against Strain. In its complaint, Rosebud sought damages of $1,500,000 for legal malpractice, treble damages pursuant to SDCL 16–18–28 and a jury trial. In September 1986, Rosebud amended its complaint to allege unjust enrichment in the amount of · $173,921.34. The complaint prayed for that amount in damages, again trebled pursuant to statute. On February 19, 1987, Rosebud filed a second amended complaint, asking that Strain be declared a constructive trustee pursuant to SDCL 55–1–8. The second amended complaint alleged that Strain had wrongfully received $173,921.34 from A & P Steel, Inc. (A & P).

## FACTS

TLE is a Rosebud subsidiary and is responsible for the management and administration of all land owned by Rosebud. By resolution dated March 8, 1977, TLE employed Strain as its attorney. Strain later signed an employment agreement with TLE. In 1977, Ed Driving Hawk (Driving Hawk), Rosebud's tribal chairman, sought Strain's assistance in obtaining federal funds for irrigation development on the reservation. Strain, as Rosebud's attorney, prepared Rosebud's grant application and traveled to Washington, D.C. to obtain the federal money for the irrigation project.

The grant was awarded to Rosebud. Strain informed Northern Farm Supply of Aberdeen (Northern), South Dakota, that Rosebud had obtained the federal grant and was looking for a contractor to construct the irrigation project. Strain accompanied Northern officers to Rosebud and introduced them to Driving Hawk. Later, a bonding problem prohibited Northern from contracting for the project. Strain received a $2,000 check from Northern. He claimed that Northern gratuitously paid him the money because he put Northern in contact with Rosebud.

When it became clear that Northern would not be able to handle the project, Strain informed A & P of the opportunity. Negotiations between Rosebud and A & P culminated in an agreement drafted by Strain. This construction contract was signed by representatives of the parties on June 21, 1977. Throughout the summer of 1977, Strain drafted several addendums to the contracts. These addendums added over 1.1 million dollars to the total price of the contract.

In July 1977, Strain formed Frontrunner Associates, Inc. (Frontrunner). Strain was the sole shareholder and employee of the corporation which was merely his alter ego. Between July 19, 1977, and February 6, 1978, A & P paid $173,921.34 to Strain through Frontrunner. Strain claimed the payments were made as a consulting fee on the irrigation project. At the very same time, Strain was representing Rosebud on the irrigation project.

Frontrunner paid Driving Hawk $12,217. It paid Richard Lone Dog (Lone Dog) $14,031. These payments were made from funds received from A & P. When these checks cleared the bank and came back into Strain's possession, he altered them. This alteration was made in an attempt to make the payments appear legitimate.

Strain was representing Rosebud and TLE in the development, installation, construction and negotiations relating to the project. At the same time, Strain was providing legal representation to A & P relative to the irrigation project. Strain drafted a lawsuit for A & P against Rosebud for an insufficient funds check which allegedly represented final payment on the contract. Strain saw that this check was paid to A & P even though the tribal council had passed a resolution stating that payment of the contract was to be held in abeyance pending an investigation. Strain made no attempt to inform Rosebud or gain its consent.

In early 1979, Strain became uneasy about the payments from A & P. He directed the bookkeeper/accountant for A & P to alter A & P's records of those payments as follows: "LeRoy: Make sure checks that were made out to FR [Frontrunner] do not tie in with Rosebud project. Or so much per syst[em] etc. However, you can show that payments were made to FR for sale of the company or payment for Rosebud projects were made."

## ISSUE 1

Whether the trial court erred when it denied Strain's motion for summary judgment based on his claim of res judicata and release? We hold that it did not.

### A. Res Judicata

Strain argues that the trial court erred when it denied his motion for summary judgment on the grounds of res judicata. Strain argues three points. First, Rosebud could have properly brought this action in prior litigation between Rosebud and A & P; thus, it should have. Second, the case arises out of the same nucleus of operative facts as the prior litigation. *Ruple v. City of Vermillion*, 714 F.2d 860 (8th Cir.1983), *cert. denied* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). Third, in Rosebud's litigation against A & P, Rosebud had more than a fair opportunity to litigate its present claim.

Both parties rely on *Black Hills Jewelry Manufacturing v. Felco Jewel Industries*, 336 N.W.2d 153, 157 (S.D.1983) which states:

The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action. *Matter of*

*Estate of Nelson,* 330 N.W.2d 151 (S.D. 1983); *Schmidt v. Zellmer,* 298 N.W.2d 178 (S.D.1980); *Gottschalk v. South Dakota State Real Estate Comm'n.,* 264 N.W.2d 905 (S.D.1978). Of course, the earlier court must have had jurisdiction and its decision must be final and unreversed. *Keith v. Willers Truck Service,* 64 S.D. 274, 266 N.W. 256 (1936).

For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. *Carr v. Preslar,* 73 S.D. 610, 47 N.W.2d 497 (1951); *Jerome v. Rust,* 23 S.D. 409, 122 N.W. 344 (1909). (Emphasis original)

It must be determined whether both causes of action are the same. "This test is a query into whether the wrong sought to be redressed is the same · in both actions." *Black Hills Jewelry, supra,* 336 N.W.2d at 157.

In prior litigation, Rosebud sought damages against A & P for fraud, conspiracy and breach of contract claims. These claims arose from the contract and the irrigation project work done by A & P. *See Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509 (8th Cir.1984). The substance of that case was Rosebud's claim against A & P for defects in the irrigation system. The action was one sounding and arising in contract. More specifically, the A & P case involved Rosebud's dissatisfaction with the materials and workmanship provided by A & P. The wrong sought to be redressed arose from the sale, development and installation of the irrigation system and equipment. The allegation was that for various reasons the sale, development and installation was woefully inadequate.

▮ This action against Strain involves a different wrong. The wrong to be redressed is the breach of fiduciary duty owed by Strain to Rosebud. If Strain had not breached his duty, the sale, development and installation may or may not have been adequate. Even if there were no breach by Strain, the system could have been faulty.[1] Strain's breach and the faulty system are two separate wrongs. Thus, because the wrong sought to be redressed is different, Strain has failed to meet this test, and res judicata cannot apply.

▮ The decision upon which one may base a claim of res judicata must be final and unreversed. *Black Hills Jewelry, supra.* The Eighth Circuit Court of Appeals in *Rosebud Sioux Tribe v. A & P Steel, Inc., supra,* reversed the federal district court's decision that Strain relies upon. Before a new trial was held, the parties settled. Since the trial court was reversed, the res judicata defense cannot lie.

Strain also relies on *Ruple v. City of Vermillion, supra. Ruple* states: "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." 714 F.2d at 861.

In that case, Ruple had been dismissed from city employment. She brought a complaint of defamation and breach of contract to the First Judicial Circuit in South Dakota. She lost on summary judgment, and this court affirmed. *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983). After the adverse ruling from the state trial court, Ruple went to the federal district court. There again, success evaded her and she appealed.

There was virtually no difference between Ruple's state and federal cause of action. In both courts the very root of her claim was the same thing, she lost her job. The only difference between the actions was the court, the parties named, and a claimed violation of 42 U.S.C. § 1983 in federal court that she did not claim in state court. She could have made the 1983 claim and named the additional parties in state court. "[A]ll of the theories that a dismissed employee can bring to play to challenge the dismissal should be raised and decided in the same lawsuit." *Ruple v. City of Vermillion, supra,* 714 F.2d at 862.

---

1. Note that we are not saying that Strain's actions had nothing to do with the faulty system.

■ Strain breached his fiduciary obligation in performing legal work. He could not have been liable for A & P's contract performance. The case against Strain and the case against A & P are based upon breaches of different duties arising from different obligations by different parties. The factual predicate creating these duties is different. The circuit court was correct; res judicata does not apply.

### B. Release

Strain argues that Rosebud released him from any liability concerning the irrigation project. When Rosebud settled with A & P, it apparently executed a release. The document purports to release "all other persons or corporations that may be classed as joint tort-feasors under the provisions of SDCL 15-8." To be joint tort-feasors under SDCL 15-8, two or more persons must be "jointly or severally liable in tort for the same injury...." SDCL 15-8-11.

■ As noted above, all the injuries to Rosebud arise from the same overall transaction. That is not to say, however, that the injuries rendered to Rosebud from Strain and A & P are the same. Strain was not named in *Rosebud Sioux Tribe v. A & P Steel, supra;* he could not have been liable for deficiencies in workmanship or material provided by A & P. Conversely, A & P could not have been liable for Strain's wrongs. The injury caused by A & P resulted in an overpriced, malfunctioning irrigation system. The injury caused by Strain was a breach, that is, a destruction of the lawyer's fiduciary duty and trust owed to his client. *See* SDCL 16-18, Appx. Code of Professional Responsibility, Canon 5 and the Ethical Considerations thereunder; *see also,* South Dakota Rules of Professional Conduct, SDCL 16-18, Appx. Chapter 2, effective July 1, 1988.

If the liability between Strain and A & P were joint, the document that Rosebud and A & P executed would not release Strain from liability for his actions. "A written

release is nothing more than a contract by which the parties consent to a release of obligation." *Maryland Casualty Company v. Delzer,* 283 N.W.2d 244, 248 (S.D. 1979); *Erck v. Bachand,* 69 S.D. 330, 10 N.W.2d 518 (1943). "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another ... are against the policy of the law." SDCL 53-9-3.[2]

■ The release, if it were to apply to Strain, would be void as against public policy. Strain had a duty to disclose to Rosebud his dealings with A & P. That affirmative duty arose from his attorney/client relationship with Rosebud. The mere silence by one under such a duty to disclose is fraudulent concealment. *Glad v. Gunderson, Farrar, Aldrich,* 378 N.W. 2d 680 (S.D.1985). The trial court was correct; Rosebud did not release Strain.

### ISSUE II

Whether the doctrine of constructive trust was appropriately applied in this case? We hold that it was.

■ A constructive trust can be applied for many reasons. SDCL 55-1-7 through SDCL 55-1-10. The circuit courts have great discretion in this area. SDCL 55-1-11. The constructive trust doctrine is a remedial device by which courts may prevent, among other things, fraud, breach of confidence, or unjust enrichment.

### A. Statute of Limitations

Strain asserts the attorney malpractice statute of limitations as a defense to the imposition of a constructive trust. On July 19, 1977, Strain received the first payment from A & P. In the case of a constructive trust the statute of limitations "begins to run from the time the act was done by which the party became charged as trustee." *Johnson v. Graff,* 71 S.D. 231, 234, 23 N.W.2d 166, 168 (1946). Rosebud filed its complaint against Strain in November 1981.

**2.** This is not to say that all releases are void as against the policy of the law. We are saying that when one occupies a position of trust and confidence, one may not hide behind a release for fraudulent or willful injury to the property of another.

Thus, Strain argues that the statute of limitations has run and the suit is barred.

Rosebud's second amended complaint avers that Strain breached the fiduciary duty between the parties. A part of this breach was concealing the payments made to Frontrunner. Strain also concealed the nature of the payments to Lone Dog and Driving Hawk. He was working both sides of the street. He was playing both sides against the middle; he never denied that he got the money.

█ The nature of the relationship between attorney and client is highly fiduciary. It consists of a very delicate, exacting and confidential character. It requires the highest degree of fidelity and good faith. It is a purely personal relationship, involving the highest personal trust and confidence. 7 Am.Jur.2d, Attorneys at Law, § 119. "[I]n South Dakota, if a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence, by the one under that duty, constitutes fraudulent concealment and thus tolls the applicable statute of limitations." *Glad v. Gunderson, Farrar, Aldrich, supra,* 378 N.W.2d at 682–683. Thus, Strain's deemed fraudulent concealment tolls the statute of limitations.

## B. Trial by Jury

█ Strain asserts that he was wrongfully denied a trial by jury. The right to a jury trial in cases at law in South Dakota is guaranteed to both litigants in Article VI, Section 6 of the South Dakota Constitution. Where the relief sought is equitable, the trial court may grant or deny a jury trial. This is within the discretion of the trial court. *Skoglund v. Staab,* 312 N.W.2d 29 (S.D.1981); *Lounsberry v. Kelly,* 32 S.D. 160, 142 N.W. 180 (1913), on rehearing, 32 S.D. 456, 143 N.W. 369 (1913); *Thomas v. Ryan,* 24 S.D. 71, 123 N.W. 68 (1909). "To determine whether the action arises at law or equity we look to the pleadings including the complaint, answer, cross complaint and prayer for relief." *Skoglund, supra,* 312 N.W.2d at 30.

█ Rosebud's second amended complaint alleges, among other things, that

Strain gained by violation of his trust and wrongful act. *See* SDCL 55–1–8. Rosebud prayed for relief in the form of a constructive trust. The imposition of a constructive trust is an equitable remedy. When a circuit court imposes a constructive trust, it acts as a court of equity. *See* SDCL 51–1–7 to 55–1–11. Thus, a jury trial was a matter left to the discretion of the trial court. We find no abuse of that discretion.

## C. Constructive Trust

Strain argues that a trust corpus is essential to the creation of a trust. While this may be accepted, it has long been recognized in South Dakota that "[a]n express trust and constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts." *In re Farmers State Bank of Amherst,* 67 S.D. 51, 61, 289 N.W. 75, 80 (1939), *quoting* Restatement of Law, Restitution § 150. Conceptually, the doctrine of constructive trust is remedial. The doctrine, by its very nature, is flexible. *See* SDCL 55–1–7 to 55–1–11. The doctrine allows courts to avoid and prevent unjust enrichment.

█ SDCL 55–1–8 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it." For the court to impose a trust under this statute, the evidence must be clear and convincing. *Jones v. Jones,* 67 S.D. 200, 291 N.W. 579 (1940). In this case, Rosebud had to show by clear and convincing evidence: (1) that Strain gained; (2) that gain was by fraud, accident, mistake, undue influence, violation of a trust *or* other wrongful act; (3) Strain had no superior rights to the thing gained; and (4) Rosebud would have otherwise had it.

Strain gained $174,000 in payments. The trial court made specific findings which were supported by the trial record. Strain never denied that he received the payments. The $174,000 was gained wrongful-

ly. Strain represented two clients in the same transaction. He also took affirmative steps to conceal the dual representation and the payments. This was done without consent or disclosure. In doing so, he breached his fiduciary duty. Strain had no superior claim to that money. He never offered credible proof that it was earned. The trial court found that the payments were nothing more than a kick-back. Rosebud would have benefitted had it had the $174,000. A & P could have spent that $174,000 on the irrigation project, that project may not have been faulty and shoddy. With the extra money, Rosebud could have built further irrigations systems. We hold that this is a proper case for the application of the remedial doctrine of constructive trust.

### ISSUE III

▮▮▮ Whether the findings of fact upon which the trial court based its decision to impress a constructive trust were clearly erroneous? We hold that they were not.

This court may not substitute its judgment of factual questions for that of the trial court unless the findings of fact are clearly erroneous. *Northern Farm Supply, Inc. v. Sprecher*, 307 N.W.2d 870 (S.D. 1981). In applying the "clearly erroneous" standard, we do not ask whether we would have made the same findings as did the trial court. Rather, the test is whether, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985); *Cunningham v. Yankton Clinic*, P.S., 262 N.W.2d 508 (S.D.1978); *In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). The findings of fact made by the trial court are presumptively correct. The burden to show error is on the appellant. *Temple, supra; Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964).

▮▮▮ After a review of the entire record, we find that Strain has not met his burden. The record supports the imposition of a constructive trust. We are not left with a definite and firm conviction that a mistake

has been made. To the contrary, we find the record amply supports the finding of fiduciary relationship, breach of that trust, wrongful gain thereby, and harm to Rosebud.

We have considered other claims and arguments raised by the Strain and find them meritless. The circuit court will be affirmed.

WUEST, C.J., MORGAN, J., and BRADSHAW, Circuit Judge, concur.

HENDERSON, J., dissents.

DOBBERPUHL, Circuit Judge, sitting for SABERS, J., disqualified.

BRADSHAW, Circuit Judge, sitting for MILLER, J., disqualified.

HENDERSON, Justice (dissenting).

Ab initio, Plaintiff/appellee, the Rosebud Sioux Tribe, demanded a jury trial and damages of $1,500,000. Defendant/appellant, Michael Strain, sued for malpractice, was asked in Interrogatory 2: "Do you have legal malpractice insurance which covers the allegations contained in the Complaint herein?" His answer was "No." Defendant had entered into a contract for legal services with Plaintiff; Plaintiff alleged, *inter alia*, a breach of contract, and that Defendant committed malpractice thereunder. Yet, through artful advocacy, Defendant was denied a jury trial.

> The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, but the Legislature may provide for a jury of less than twelve in any court not a court of record and for the decision of civil cases by three-fourths of the jury in any court.

S.D. Const. art. VI, § 6.

Judgment was granted herein on the first day of July 1987 by the Honorable Marshall M. Gerken, Circuit Court Judge, as follows:

> That the Rosebud Sioux Tribe is hereby granted Judgment against the Defendant, Michael Strain for the principal amount of $173,921.34 plus prejudgment

interest as of June 1, 1987 in the amount of $231,956.32 plus their costs and disbursements herein in the amount of $_____ to be taxed by the clerk. Throughout the course of the proceedings, Defendant's counsel insisted upon a jury trial and furnished a MEMORANDUM OF LAW REGARDING RIGHT TO JURY TRIAL to the trial court. Extensive findings of fact and conclusions of law were entered herein by the trial court, as this case was tried to the court, for all pleas that this case be tried before a jury went unheeded.

In closing argument, before this Court at the State Capitol, Attorney J.M. Grossenburg, in response to a question from the bench, was asked why, just thirty days before trial, did Plaintiff, legally, take a new pleading stance. Attorney Grossenburg indicated that the Plaintiff had "jettisoned all theories but constructive trust." He further reflected, at oral argument of this case, that Plaintiff did it because of efficiency and to avoid a jury trial.

This special writer is not seeking to moralize any conduct of an attorney in this state hereby. However, all citizens, including attorneys, right or wrong, when confronted with a damage plea and a damage award such as witnessed in this case, are entitled to a jury trial. I base this dissent upon the legal premise that Defendant was *intentionally* deprived of a jury trial. Under SDCL 15-6-38(a), we find: "The right of trial by jury as declared by article VI, section 6 of the Constitution of South Dakota or as given by a statute of South Dakota shall be preserved to the parties inviolate." To deny Defendant Strain a jury trial was reversible error.

The last prayer for relief which I can find in this record is an AMENDED COMPLAINT dated the second day of September, 1986. Uniquely, the circuit court judge, per this Amended Complaint, entered an Order from the bench that the Plaintiff amend his pleading. To the previous pleading, Plaintiff added: "16A. Attorney Strain fraudulently concealed his conflict of interest"; and "17A. That Attorney Strain was unjustly enriched in the amount of $173,921.34 in kick-back payments...." In said 17A, it was further alleged that Attorney Strain had "an implied trust to account for this money to the Rosebud Sioux Tribe, but failed to do so." One schooled in the law, and who would follow the theory of pleading in a case, would necessarily arrive at a conclusion that a terrible wrong has been inflicted upon this lawyer. Studying theory, and then applying it to the facts at hand, places a legal mind in a zone I shall call Election of Remedies. Here, the Plaintiff could have brought an action *at law* to recover damages resulting from fraud or the breach of some duty giving rise to an implied trust. Plaintiff could have sued in equity to impress a trust upon the property. But, to have done so, *i.e.*, instituting either action, would have created an Election of Remedies inconsistent with the other. Plaintiff sued, pursuing its remedy *at law*, by instituting a legal malpractice action. Approximately thirty days before trial, as stated above, a tactical maneuver was made whereby Plaintiff switched theories. The switch was an artful ploy to deprive this lawyer of a jury trial. By 1980, the res upon which the trial court impressed a constructive trust, was absolutely dissipated. How, then, could a trial court impress a constructive trust upon a "nothing"? After impressing the constructive trust upon "nothing," a judgment of approximately one-half million dollars was granted against this lawyer. Inconsistent remedies were, therefore, pursued. An Election of Remedies must be made where a party has a purported right to impress a trust upon property. 25 Am.Jur.2d *Election of Remedies* § 30 (1966). There was inconsistency in theory.

Pursuing our conceptualization further, if a constructive trust is imposed, a beneficiary has two options, *i.e.*, follow the trust property and its proceeds or recover damages for wrongful conversion. 76 Am.Jur. 2d *Trusts* § 253 (1975). Why the abandonment of the pursuit of the trust property and its proceeds? The answer is simple: By 1980, the res whereupon the trust could be impressed was dissipated down to the paltry sum of $85. Therefore, counsel for

the Plaintiff whirled in its conceptualization, even though Plaintiff had "jettisoned all theories but constructive trust," per its statements before the appellate bench, and demanded damages for conversion of the trust res. Conversion is an action *at law* for damages. SDCL 21–3–3. Note that the amount of $173,921.34 in the Amended Complaint, upon which Plaintiff alleges the Defendant had "an implied trust to account for this money to the Rosebud Sioux Tribe, but failed to do so," is the identical principal amount awarded in the judgment. In *Skoglund v. Staab*, 312 N.W.2d 29, 30 (S.D.1981), we expressed:

> The right to a jury trial is guaranteed both litigants in Article VI, § 6 of the South Dakota Constitution and SDCL 15–6–38(a), (b). This right, however, does not exist in all civil cases. In cases where the pleadings seek equitable relief or the legal relief is incidental, a jury trial is a matter for the trial court's discretion. *Lounsberry v. Kelly*, 32 S.D. 160, 142 N.W. 180 (1913), *on rehearing* 143 N.W. 369 (1913); *Thomas v. Ryan*, 24 S.D. 71, 123 N.W. 68 (1909). Conversely, when the action is at law, either party has a right to a jury trial. *Thomas v. Mettel*, 41 S.D. 322, 168 N.W. 651, 652 (1918); *Purcell v. International Harvester Co.*, 37 S.D. 517, 159 N.W. 47 (1916). To determine whether the action arises at law or equity we look to the pleadings including the complaint, answer, cross-complaint and prayer for relief. *Arlt v. Langley*, 56 S.D. 79, 227 N.W. 469, 473 (1929).

When you plead for money, and your prayer is over one-half million dollars, how in tarnation can the legal relief be "incidental"? Money judgment they wanted, and money judgment they got.

From what I can read in this record, I cannot approve of this Defendant's conduct. But this is not an ethics case. This is not a disbarment or disciplinary proceeding. A defendant's right to a trial before a jury was forged in the fires of Lexington and Concord, and I do not wish to erode that right. Captioned "Prayer for Relief," the Plaintiff prayed for relief, by way of a total substitution to the November 19, 1981

complaint and pleaded as follows: "WHEREFORE, plaintiff prays for judgment against defendant in the amount of $173,921.34 trebled, or $521,764.02." Under such a prayer for relief, this was a demand, at law, for damages. As the United States Supreme Court has observed: "[I]nsofar as the complaint requests a money judgment it presents a claim which is unquestionably legal." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44, 50 (1962).

> This solution in effect assumes that substantive ideas of equity have worked over into law, so that mistake, fraud, unjust enrichment, undue influence and so on, though having equitable origins, are now fully legal. Under this solution no case becomes an equitable case *merely* because of the substantive right or defense involved. It becomes equitable *only* when some *in personam* order, backed by contempt power, is issued. In other words, under this solution, it is the *remedy* that makes the case equitable, not the right.

D. Dobbs, *Handbook on the Law of Remedies*, § 2.6, at 74 (1973) (emphasis in original). *Dairy Queen* stands "as a reaffirmation of the historic American commitment to the jury...." J. Friedenthal, M. Kane, & A. Miller, *Civil Procedure*, § 11.6, at 497 (1985). We should not relax this commitment.

There can be no doubt, absolutely no doubt whatsoever, that these pleadings demanded a money judgment notwithstanding the remarks of Attorney Grossenburg before the bench. Reference is made hereby to *Kneeland v. Matz*, 388 N.W.2d 890, 892 (S.D.1986), which held, *inter alia*, that "a party has a right to a jury trial if the action is one at law...." A further holding was that a constitutionally protected right to trial by jury is preserved if in some stage of a proceeding the right to a jury trial is given. *Id.* at 892. S.D. Const. art. VI, § 6. *See also Orr v. Kneip*, 287 N.W.2d 480, 485 (S.D.1979).

Accordingly, I would reverse this case entirely so that the constitutional mandate would be fulfilled and Defendant be grant-

ed a right to a jury trial before a judgment of close to one-half million dollars is granted against him. Lawyers—who are constantly fighting to protect people's rights in our courts—should not be denied the very rights that they seek to protect. As I stated in my dissent in *Light v. Elliott*, 295 N.W.2d 724, 727 (S.D.1980), where I upheld the cause of a lawyer: "Lawyers are people, too."