Beverly NIZIELSKI and Loretta
McClain, Plaintiffs and
Appellants,

v.

Ervin TVINNEREIM and Selma
Tvinnereim, Defendants and
Appellees.

No. 16731.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1990.

Decided April 4, 1990.

Arthur M. Hopper, Watertown, for plaintiffs and appellants.

James R. Delaney, Webster, Rory King, Aberdeen, for defendants and appellees.

HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES

This is the second appeal by Beverly Nizielski and Loretta McClain (Nizielski and McClain) in this case. Nizielski and McClain first appealed the entry of a Summary Judgment in favor of Ervin and Selma Tvinnereim (the Tvinnereims) on May 15, 1987. This Court reversed the Summary Judgment and remanded the case to the trial court. *Nizielski v. Tvinnereim,* 429 N.W.2d 483 (S.D.1988).

The case was scheduled for trial on March 28, 1989, and commenced on that day. On March 30, 1989, the jury returned a verdict for Nizielski and McClain awarding them the sum of $32,000.00. On April 3, 1989, the court sent a Memorandum Decision to Nizielski and McClain which recited that the jury was acting in an advisory capacity. Contrary to the jury verdict, the Memorandum Decision went on to rule for the Tvinnereims in all respects. On appeal Nizielski and McClain argue:

1) That the trial court erred in concluding that Nizielski and McClain were not entitled to a trial by jury on the issues of undue influence and monetary damages;

2) That the trial court erred in considering the jury verdict in favor of Nizielski and McClain to be advisory;

3) That findings of fact of the trial court, holding no undue influence and that Lena Tvinnereim's joint bank accounts were intended to be the sole property of Ervin Tvinnereim, were not supported by the record;

4) That the trial court erred in concluding that the burden of proof is on Nizielski and McClain to establish undue influence by a preponderance of the evidence.

—Holding—

We reverse and remand to the trial court judge, with directions to reinstate the jury's verdict. Below, we treat the first two issues, deeming that issues 3 and 4 are not vital to our decision.

FACTS

The parties in this action are all children of Ben and Lena Tvinnereim. Ben Tvinnereim died testate on February 28, 1947 and Lena Tvinnereim died intestate on October 22, 1984.

Following Ben Tvinnereim's death, his will was admitted to probate, leaving two quarters of land (the home place) to brothers Donald and Ervin, subject to the life estate in his wife, Lena. The residue of the estate was divided among Lena and the children. Ervin subsequently bought out Donald's interest in the property and was the sole remainderman at the time of Lena's death in 1984.

In 1967, Lena began to experience difficulties in her vision, which continued to deteriorate. In 1968, Lena suffered a broken hip. At that point, Selma, her daughter, came to live with her mother. From March, 1971 until her death, Lena's vision was below the level established for "legal blindness." Her condition did not improve throughout the rest of her life. During her later years, Lena's hearing was also impaired.

From 1947 to 1957, the farmland was leased by Ervin and 3 of his brothers. It was at the end of that period that Ervin bought out Donald and terminated the partnership with the other brothers. The rental arrangements for the period from 1958 through 1975 are not clear. In any event, in 1975 Lena executed a Quit Claim Deed conveying the home place to Ervin and his wife, reserving a life estate interest. Ervin testified that the purpose for the deed was to relieve Lena of the responsibility of receiving income, paying taxes and making land payments. The deed stated that Lena was "to have the income therefrom and to pay all taxes," but, in fact, he kept Lena's share.

In 1962, a joint tenancy checking account was created by Lena and Ervin. Ervin testified that from 1975 on, with but few exceptions, the only income deposited in that account was Lena's social security benefits. In any event, after the other children began demanding an accounting after Lena's death, Ervin made a distribution of the balance in that account.

At the time of her death, Lena also held a certificate of deposit jointly with Ervin. That certificate was eventually redeemed by Ervin and is now held jointly between Ervin and Una Tvinnereim, his wife.

DECISION

I. *The trial court erred in concluding that Nizielski and McClain were not entitled to a trial by jury on the issues of undue influence and monetary damage.*

The right to a jury trial is guaranteed both litigants in Article VI, § 6 of the

South Dakota Constitution and SDCL 15–6–38(a), (b). This right, however, does not exist in all civil cases. In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion. *Skoglund v. Staab*, 312 N.W.2d 29 (S.D.1981); citing, *Lounsberry v. Kelly*, 32 S.D. 160, 142 N.W. 180 (1913) on rehearing 32 S.D. 456, 143 N.W. 369 (1913); *Thomas v. Ryan*, 24 S.D. 71, 123 N.W. 68 (1909). Conversely, when the action is at law, either party has a right to a jury trial. *Rosebud Sioux Tribe v. Strain*, 432 N.W.2d 259 (S.D.1988); *Thomas v. Mettel*, 41 S.D. 322, 168 N.W. 651, 652 (1918). To determine whether the action arises at law or equity, we look to the pleadings, including the complaint, answer, cross-complaint and prayer for relief. *Arlt v. Langley*, 56 S.D. 79, 227 N.W. 469, 473 (1929).

■ Undue influence is defined by statute, SDCL 53–4–7, and this Court has identified the elements on several occasions. *See* e.g., *Davies v. Toms*, 75 S.D. 273, 63 N.W.2d 406 (1954); *Kase v. French*, 325 N.W.2d 678 (S.D.1982). A jury verdict awarding money damages resulting from undue influence was upheld by this Court in *Hyde v. Hyde*, 78 S.D. 176, 99 N.W.2d 788 (1959). The *Hyde* case properly recognizes the nature of the claim for damages resulting from undue influence as legal, entitling the parties to trial by jury.

This Court has recognized the legal nature of these claims in more recent times. *Black v. Gardner*, 320 N.W.2d 153 (S.D. 1982) pertained to a trial by jury of an undue influence issue. The parties in that case consented to the submission of this issue to the jury. In a footnote, the *Black* court acknowledged *Redford v. Weller*, 27 S.D. 334, 131 N.W. 296 (1911), stating:

> This case (Redford) has never been overruled or modified. This action could well have been maintained as a law action under this section of the code [SDCL 53–4–7] as no equitable relief was prayed for; the suit was for damages only; and overt actions of misconduct and undue influence were alleged and proved.

As such, there is no room for doubt that an action to recover monetary damages for all money obtained through the exercise of undue influence, which was expressly pleaded here, is legal in nature.

■ In the present case, the trial court concluded that this was an action for cancellation of a deed and inter vivos transfers of property. In reality, the case has nothing to do with the cancellation of the Quit Claim Deed. An amended complaint pleaded two causes of action, the first one seeking an accounting and the second one *specifically alleged* undue influence, deception and wrongful inducement. Further, the amended complaint contained a demand for a jury trial.

A review of the pleadings indicates that a question of fact existed regarding whether the money obtained by Ervin resulted from undue influence over his mother, thus warranting submission of the case to the jury. Nizielski and McClain are merely requesting the money which was obtained by the Tvinnereims through the alleged undue influence. They are 'claiming that the Tvinnereims wrongfully obtained the very income that was reserved for their mother in that deed. Although Nizielski and McClain originally requested an accounting from the Tvinnereims, and sought permission to inspect their mother's personal property, the heart of their Amended Complaint was for the recovery of money. Also, none of the jury instructions nor relief requested at trial pertained to the incidental questions of accounting or inspection.

II. *The trial court erred in considering the jury verdict in favor of Nizielski to be advisory.*

■ In a unanimous opinion, we stated in *Orr v. Kneip*, 287 N.W.2d 480 (S.D. 1979):

> ... consequently, in the instant case, the equity powers of the court were not invoked and the jury verdicts cannot be considered advisory, *since advisory juries are available only in actions which sound in equity*, SDCL 15–6–39(c). (Emphasis supplied mine).

*Orr* thus implies that on equitable issues a jury's verdict is advisory only, but if the action is one at law, a jury cannot serve in an advisory capacity. This is the settled law in South Dakota. Since this action does not "sound" in equity, the trial court erred in considering the jury verdict in favor of Nizielski to be advisory.

Furthermore, we believe that fundamental fairness requires upholding this jury verdict after the conclusion of the trial because of several procedural factors. We believe that there was consent by both parties to a trial by a non-advisory verdict under SDCL 15-6-39(c). The trial court entered a finding that there was no right to a jury trial, four days after the conclusion of the jury trial. We cannot believe that it is fair to treat a jury's verdict as advisory only *after* the jury has returned its verdict. The critical issue is the timing of a court's decision to treat the jury's verdict as advisory. We generally adopt the reasoning in *Bereda v. Pickering Creek Industrial Park, Inc.*, 865 F.2d 49 (3d Cir.1989). In *Bereda* the court stated:

> Were a district judge able to indicate that it would treat the jury's verdict as advisory *after* the jury had returned its verdict, the part of Rule 39(c) allowing for a non-advisory jury in cases not triable of right by a jury would be effectively excised from the rule in such a case. All jury verdicts in cases not triable by right by a jury would effectively be advisory, as the district judge could always rule that the verdict was advisory if the judge did not agree with the jury's verdict. (emphasis by the court).

We further note that although an informal telephone conference took place on the day before the trial; however, there was no motion made pursuant to the Rules of Civil Procedure as denoted by SDCL 15-6-7(b) and no hearing was held under SDCL 15-6-6(d). No lower court decision or order was made or entered and under the state of the pleadings, we hold that the parties reasonably expected the jury verdict to be binding. For future guidance, we advise the circuit courts of this state that a circuit court judge must notify opposing parties of a jury's advisory status no later than the time at which the jury selection has begun. This is to ensure fair notice to the litigants of the arena in which they find themselves in; and, further so that they can knowledgeably proceed with a mental determination as to how they can effectively conduct voir dire examination having a basic viewpoint of the role of the jury in the proceeding. *Accord: Hildebrand v. Board of Trustees*, 607 F.2d 705 (6th Cir.1979).

Reversed with instructions to reinstate the jury's verdict.

WUEST, C.J., and, MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I concur in result.

Although I am not convinced that the plaintiffs are entitled to a jury trial as a matter of right, they are clearly entitled to reinstatement of the jury verdict because all of the issues were tried by the parties to the jury.