ters. Either means would be "direct," in accordance with the extent to which the term was to be limited by the department's understanding of what was an indirect fire alarm, but the "means of communicating" the alarm was thus left wholly to conjecture, so far as the defendant was concerned. The order was not made in compliance with the reasonable meaning of the statute, and the failure to comply with it was no violation such as could support an action for the statutory penalty.

Judgment reversed, with costs, and complaint dismissed. All concur.

(45 Misc. 402)

## BARRY v. SMART SET PUB. CO.

(Supreme Court, Appellate Term. November 10, 1904.)

1. CONTRACTS—CONSIDERATION.

> Plaintiff had agreed with a publishing company that it might publish his book within a certain time, and that, if it did not, his rights as author should revert to him on payment of a certain sum. Defendant, with knowledge of such contract, entered into a contract with plaintiff that, in consideration of his permission to publish the work, defendant would pay him a certain royalty. *Held* that, though this could not confer on defendant an absolute right to publish, it disabled plaintiff from questioning that right, and was not without a consideration.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by John D. Barry against the Smart Set Publishing Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The action was to recover royalties upon a contract whereby the defendant promised, in consideration of the plaintiff having given his permission to it to produce and publish a story of which he was the author, in book form, to pay him a royalty of 15 cents for each book published and sold. The defense was that the plaintiff falsely represented himself to be possessed of exclusive literary property rights in the story, and thereby induced the contract.

Argued before FREEDMAN, P. J., and BISCHOFF and FITZGERALD, JJ.

Aaron C. Thayer, for respondent.
David May and I. N. Jacobson, for appellant.

BISCHOFF, J. The book, for royalties on the sale of which this action was brought, bore the following inscription: "Naught's gained, all's spent, when our desire is got without content"; not wholly without portent to the parties, in view of the defendant's attitude in this litigation.

Concededly the contract was to the effect that in consideration of the plaintiff's permission to the defendant to publish his story, "The Congressman's Wife," in book form, the defendant would pay him a royalty of 15 cents for each copy sold. The plaintiff's permission was given, the book was published, and 2,080 copies thereof were sold. The plaintiff's recovery is not assailable as excessive in amount.

It was contended for the defendant that the plaintiff had induced it to enter into the contract by representing himself to be exclusively enti-

tled to the literary property rights in the story, whereas, in truth, he had previously parted with such rights to .the Ess Ess Publishing Company. Upon the trial, however, it conclusively appeared from the evidence that the defendant contracted with the plaintiff, knowing of his contract with the Ess Ess Company, pursuant to the terms of which that company had acquired the right to publish the story within a given time;. and the plaintiff was entitled to a reversion of his rights as author, upon the payment of a stated sum, if the Ess Ess. Company should fail to publish the story, which it did. The defendant's motive, therefore, for desiring the plaintiff's permission to its publication is plain. Without such permission it could not have acquired an unqualified right to publish the story from anybody.

Aside from this claim of misrepresentation, the defendant now urges that since, when it entered into the contract with the plaintiff, the latter ·had not yet been reinstated in his former rights, the sum payable to the Ess Ess Company remaining unpaid, his permission then given was of no avail to the defendant, and did not give it the right to publish the story, and so that the contract with the plaintiff failed of consideration, and was not obligatory upon it. The fallacy of this contention, howr-ever, appears when it is pointed out that, agreeably to its contract with the plaintiff, the defendant purchased his permission to the publication by it, not the right thereto. The contract, as made, operated to disable the plaintiff from subsequently questioning the ·defendant's right to publish the story, so far as he was personally concerned. This may or may not have been a substantial advantage to the plaintiff, but it was what the parties bargained for. The ·plaintiff was free to withhold his permission, and, having given it, the disability assumed must be deemed to be the measure of consideration accepted by the defendant for its promise. It is obvious that the defendant confounds the consideration with the motive which led it to the making of the contract, or its expectation of a result therefrom. Philpot v. Gruninger, 81 U. S. 570, 20 L. Ed. 743. With neither of these, however, are we concerned. What it sought of the plaintiff for its promise to pay him royalties was his permission of the publication. This permission the defendant concededly had, and, both upon principle and authority, this established the contractual relation of the parties. Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693. Nor can the contract as entered into be reasonably construed to involve an attempt upon the plaintiff's part to induce the defendant to commit an unlawful act by undertaking the publication of the story in violation of the property rights of others therein.

The judgment should be affirmed, with costs. All concur.