CRAWFORD et ux., Appellants, v. CARTER, Respondent

(52 N. W.2d 302)

(File No. 9243. Opinion filed March 4, 1952)

Rehearing denied April 18, 1952

Irving R. Crawford, Huron, for Appellants.

Royhl & Benson and Fosheim & Blue, Huron, for Respondent.

SMITH, J. In this action, brought by Joe Crawford, to quiet his title to a one-acre tract of land, the defendant L. A. Carter counterclaimed for specific performance of an oral contract to convey. A judgment for specific performance was reversed by this court for the reason that the family homestead of Crawford embraced the acre, and Mrs. Crawford was not a party to the proceeding. Crawford v. Carter, 72 S. D. 514, 37 N.W.2d 241. After Mrs. Crawford had been added as a party defendant Carter filed and served his cross complaint praying specific performance of the above mentioned agreement. Subsequently, this court interpreted its judgment, and granted Crawford's application for a writ of mandamus commanding the trial court to try and determine the issues as made up by the amended pleadings. State ex rel. Crawford v. Hanson, 73 S.D. 249, 41 N.W.2d 646. A trial of the issues resulted in a second judgment for Carter

directing a conveyance to him of the property in question. Mr. and Mrs. Crawford have appealed. We preface consideration of their substantial assignment of error with a brief explanatory statement.

The farm home of Crawfords is located a little more than a mile north of Huron along the west side of Highway No. 37. It originally included 99 acres. The acre in controversy was added subsequently. It is located immediately south of the farm buildings along the highway; a tax title thereto was acquired by Crawford after it had been abandoned as the site of a radio tower. The farming operations included the raising of hogs, in connection with which Crawford trucked garbage from the city of Huron, and this acre was used as a hog pasture.

For a number of years prior to March 1946 Crawford has been accustomed to go to Carter's place of business in Huron for truck and tractor repairs, and for his gas and oil. During that month negotiations were carried on between them looking toward the possible location of Carter's business on the Crawford farm. From evidence in sharp dispute the court found that in consideration of Carter's promise to erect the necessary structures and relocate his entire business on the radio tower acre, Crawford promised thereafter to convey the acre to Carter; that thereupon Carter went into possession and at a cost of over $5,500 located his business on the acre and in so doing erected a concrete block garage adequately equipped with repair and welding tools, an office building, gasoline pumps on a concerte island, a house, water pipes, and driveways, and that although Carter had completely performed the agreement on his part, Crawford had failed and refused to deed the acre to Carter. Predicated principally on these findings the court decreed specific performance.

In Steensland v. Noel, 28 S. D. 522, 134 N.W. 207, 210, this court quoted from Pomeroy on Contracts, 2d Ed., § 136, as follows: "In order that a court of equity shall exercise its power to decree a specific execution, where there has been a part of performance, the contract itself must be clear, certain, and unambiguous in its terms, and must either be

admitted by the pleadings, or proved, with a reasonable degree of certainty, to the satisfaction of the court. If therefore, upon all the evidence given by both parties, the court is left in doubt as to the entire contract, or even as to any of its material terms, it will not grant the remedy although a partial performance of something has been sufficiently proved." Both phases of this requirement of certainty of proof are argued by the Crawfords as their first two propositions. They argue that (a) there is no such convincing proof of the entire contract as is required to invoke the extraordinary remedy of specific performance and (b) if an agreement as a whole was established all of its terms were not sufficiently certain to make the precise act which is to be done clearly ascertainable. SDC 37.4602(6).

■■ An agreement resulted from the described negotiations of Crawford and Carter. Whether it was an agreement to convey or .for a tenancy was the central issue of fact. We do not understand that Crawfords contend the essential certainty of proof was not achieved merely because there was a conflict in the evidence. They accept the pronouncement of Steensland v. Noel, supra, as follows: "The correct rule in this class of cases is that the contract with all its material terms and conditions must be proved by evidence which appears clear and satisfactory to the mind of the trial court, and which, even though conflicting, does not leave the court in doubt." Cf. Johnston v. Eriksson, 71 S. D. 268, 23 N.W.2d 799. We have reviewed the record with that principle in mind. We content ourselves with a statement of our conclusion. Counsel for Crawfords predicates uncertainty of proof upon instances where agreement between witnesses seems too perfect, and upon inconsistencies in the testimony. However, when the whole evidence is examined in the light of the conduct of the parties after the agreement was reached, we are convinced that solid support appears for an abiding conviction on the part of the trier of the fact that a promise to convey was exchanged for a promise to locate the Carter business on the Crawford property. After hearing and seeing the witnesses, two able and exprienced trial judges have separately concluded that such an agreement was consummated.

■■ The contention that there was insufficient proof of the terms of the agreement but reargues the contention made on the former appeal that the verbal understanding failed to describe the property to be conveyed. In response to the original argument we said, "That which was uncertain became certain as soon as plaintiff put defendant in possession of a plot of ground, and the infirmity in the contract to which plaintiff points was thereby cured. * * * A court of equity does not look with favor on objections raised on grounds of uncertainty after a matter has advanced beyond the stage of contract and that which has been done in reliance on the contract not only makes the precise act which remains to be done clearly ascertainable but leaves the complaining party without an adequate remedy unless the contract be enforced. Pomeroy, Specific Performance of Contracts, § 145, p. 378." [72 S. D. 514, 37 N.W.2d 243.] In view of the fact that the complaint alleges and the answer admits that Carter is in possession of the acre, we discern no warrant for a different holding on this appeal.

■■ The adequacy of the consideration received by Crawfords to invoke the remedy of specific performance is the next matter questioned. The ancient rule that inadequacy of consideration is sufficient, standing alone, to warrant denial of specific performance, which was championed by Chancellor Kent in Seymour v. Delancey, 6 Johns Ch., N. Y. 222, and thereafter was codified by the Field draft of the Civil Code as § 1894-1, appears in our statutes as SDC 37.4603(1). Cf. O'Hara v. Lynch, 172 Cal. 525, 157 P. 608. The section reads as follows: "Specific performance cannot be enforced against a party to a contract in any of the following cases: (1) If he has not received an adequate consideration for the contract." Obviously, this rule was adopted for the reason it was believed that the equities of such a situation did not justify the employment of the extraordinary remedy of specific performance. However, there is an exception to the rule codified by this section. The annotator, 65 A.L.R. 81, treats of that exception in these words, "There is to the general rule requiring an adequate consideration the exception that where there is no pecuniary standard by which to measure the consideration for a contract, and

it has been fully performed by the party furnishing such consideration, it will be specifically enforced without an inquiry into the adequacy of the consideration, if the failure to grant such relief would operate as a fraud upon plaintiff."

■■ The record reveals that the motive which induced Crawford to contract was so that he could enjoy the convenience of having Carter's service station and repair shop right at hand and thus avoid handling his gas and oil in barrels and cans and the moving of machinery to him in Huron for repairs. All dealings between the parties ceased after Carter demanded a deed. Hence Crawford is not enjoying the benefits he anticipated, and counsel argues that Crawfords have suffered a positive detriment because of the proximity of the Carter business to their home. In dealing with this argument, it is important to identify the consideration received by Crawford. That which Mr. Justice Strong wrote in Philpot v. Gruninger, 14 Wall. 570, 81 U.S. 570, 20 L.Ed. 743, contributes to analysis: "* * * Nothing is consideration that is not regarded as such by both parties. It is the price voluntarily paid for a promisor's undertaking. An expectation of results often leads to the formation of a contract, but neither the expectation or the result is 'the cause or meritorious occasion requiring a mutual recompense in fact or in law.' * * *"

The consideration for which Mr. Crawford contracted, according to the finding of the court, was the establishment of the Carter business on the radio tower acre. At a cost to Carter of considerable effort and over $5,500, he delivered that consideration. Frequently the adequacy of consideration cannot be judged. "As Hobbes says, the value of all things contracted for is measured by the appetite of the contractors." 12 Am.Jur., Contracts, § 122, p. 615. In this instance, Crawford contracted for such an immeasurable consideration from Carter. If( after performance on his part, that which was promised in exchange is not forthcoming Carter will have suffered a loss which cannot be accurately estimated. The exception supra was developed to permit equity to intervene in such extraordinary circumstances and thus avoid a fraud. The parties were placed in their present unfortunate plight by wrongdoing of Crawford. We

are satisfied that SDC 37.4603 was not intended to lessen the power of equity to thwart such a fraud. We hold the contention that specific performance cannot be had because the consideration received by Crawford was inadequate to be inadmissible.

■ Closely connected to the matter last considered is the contention that the court made a new contract for the parties. As they were reaching a close of the testimony on the second trial, Carter offered to do equity by giving assurance that his employees would respond to Crawford's request for service. Thereafter, and perhaps at the suggestion of the trial court, Carter offered to pay to Crawford the sum of $50, being the highest value placed on the acre as of the time of the contract. The judgment of the court required such a payment from Carter. Thus the claim that the court made a new contract for the parties.

Whether such an offer was required of Carter as a matter of equity need not be decided. We think the contention that the court made and enforced a new contract is untenable.

It seems obvious that, recognizing the differences which had developed between the parties, and that such differences would discourage dealings between them and hence Crawford would not actually experience the benefits he anticipated as a result of performance of the contract, the trial court exacted this payment from Carter as a condition to the relief for which he prayed, in a commendable effort to shape its decree so as to do justice. It is difficult to preceive wherein Crawford was prejudiced.

■■ In substance the trial court found that Mrs. Crawford acquiesced in the verbal contract, intended to abandon her homestead rights in the acre, and by her conduct in encouraging the improvements installed by Carter is estopped to assert a homestead right in the premises. The Crawfords question the sufficiency of the evidence to support these findings and conclusions. The critical question is whether Mrs. Crawford had knowledge of the arrangement between her husband and Carter. There is testimony, if believed, which warrants an inference of that fact. We cannot say that the trial court's belief of these witnesses

was unreasonable. It is settled that where credibility of witnesses enters into the findings they will not be disturbed unless the evidence clearly preponderates against them. Houck v. Hult, 63 S. D. 290, 258 N.W. 142; Scott v. Liechti, 70 S. D. 89, 15 N.W.2d 1; and Johnson v. Olson, 71 S. D. 486, 26 N.W.2d 132. Cf. Rhode v. Farup, 67 S. D. 437, 293 N.W. 632. The record, in our opinion, sustains the court's findings.

·The remaining contentions have been considered and are deemed not to warrant discussion.

The judgment is affirmed.

All the Judges concur.