2001 SD 60

**Timothy LONGWELL, Plaintiff and Appellant,**

v.

**CUSTOM BENEFIT PROGRAMS MIDWEST, INC., a South Dakota Corporation, Defendant and Appellee.**

No. 21585.

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 2001.

Decided May 16, 2001.

tive damages of $25,000.00 against Longwell. We affirm.

## FACTS

[¶ 2.] CBPM was incorporated in 1996 by Philip and Eric Koehler to sell employee benefits and insurance. In January 1997, Longwell became a shareholder and employee of CBPM. In 1998, Eric Koehler left the corporation. His shares of stock in the corporation were redeemed, and Philip Koehler and Longwell became co-equal shareholders in CBPM. By January 1999, the relationship between Koehler and Longwell had deteriorated and in April 1999, Longwell petitioned the trial court for liquidation of CBPM.

[¶ 3.] Other facts will be set forth where relevant to discussion of the issues.

Brad P. Gordon of Fuller, Tellinghuisen, Gordon & Percy, Spearfish, for plaintiff and appellant.

Thomas E. Brady, Spearfish, for defendant and appellee.

## ERICKSON, Circuit Judge

[¶ 1.] This is an action brought by Timothy Longwell, a director, stockholder and employee of Custom Benefit Programs Midwest, Inc. (CBPM) for liquidation of the corporation and its assets. Philip Koehler, the remaining director, stockholder and president of CBPM, answered and filed a derivative counterclaim alleging breach of contract, usurpation of corporate opportunities and conversion of assets. The trial court allowed the derivative counterclaim and found that Longwell had breached his contract, usurped corporate opportunities and converted assets. The trial court further assessed damages of $137,431.70, costs of $112,431.70, and puni-

## STANDARD OF REVIEW

[¶ 4.] "We review the circuit court's findings of fact under the clearly erroneous standard. 'Clear error is shown only when, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them.' Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law." *Arnold Murray Constr. v. Hicks*, 2001 SD 7, ¶ 6, 621 N.W.2d 171, 174.

## ISSUE ONE

[¶ 5.] **Whether a derivative counterclaim was properly allowed under the provisions of SDCL 15–6–23.1.**

[¶ 6.] Longwell argues that Koehler failed under SDCL 15–6–23.1 [1] to properly

---

1. SDCL 15-6-23.1 provides that:

In a derivative action brought by one or more shareholders or members to enforce a

plead his derivative action. Koehler's verified answer and complaint alleges:

1. Longwell has demanded that CBPM not defend the corporation in this action;
2. Longwell is attempting to prevent CBPM from pursuing claims against him; and
3. CBPM had demanded disclosures and accountings from Longwell, which had been refused.

[¶ 7.] Koehler argues it would have been futile to demand corporate action. There were only two stockholders and they were deadlocked. "[F]utility is measured when a case is filed." *Noble v. Shaver*, 1998 SD 102, ¶ 17, n. 3, 583 N.W.2d 643, 647 (citing *In re Storage Technology Corp. Securities Litigation*, 804 F.Supp. 1368, 1376 (D.Colo. 1992); 13 Fletcher's Cyclopedia of Corporations, § 5965 at 40 (1995); and *Loftus v. Farmers' Shipping Ass'n*, 8 S.D. 201, 204–05, 65 N.W. 1076, 1078 (1896)).

■ [¶ 8.] In *Noble*, the only South Dakota case discussing SDCL 15–6–23.1, we stated that when determining whether it would have been futile to demand corporate action, the trial court must review the particularized factual allegations and determine whether the derivative shareholder's complaint "creates a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand." *Id.*

[¶ 9.] As in *Noble*, it is clear that at the time the complaint was filed any further demand would have been futile. Accordingly, the trial court was correct in allowing Koehler to proceed on the derivative complaint.

### ISSUE TWO

[¶ 10.] **Whether the trial court erred when it found that while the directors were deadlocked, CBPM had not been threatened with irreparable damage.**

[¶ 11.] The parties agree they are deadlocked. They also agree SDCL 47–7–34[2] allows the trial court to liquidate a

---

right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the state which it would not otherwise have. *The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.* The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs. [Emphasis provided].

2. SDCL 47–7–34:

The circuit court shall have full power to liquidate the assets and business of a corporation in an action by a shareholder when it is established:

(1) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

(2) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or

corporation when the directors are dead-locked and irreparable damage has oc-curred, or is threatened, or when the acts of the directors are illegal, oppressive or fraudulent. The trial court found that while the directors were deadlocked as to the management of the business, CBPM was not threatened with, nor was it suffer-ing irreparable damage.

[¶ 12.] Longwell cites *Black v. Gra-ham*, 266 Ga. 154, 464 S.E.2d 814 (1996) for authority that a corporation is threat-ened with irreparable damage when there are only two equal stockholders acting as directors, who are wholly unable to agree on the management of the business. The Georgia court determined that this factual scenario created a hostile and static situa-tion threatening irreparable harm to the corporation. *Id.* at 815.

[¶ 13.] In South Dakota, "[a]n injury is irreparable ... where ... it cannot be readily, adequately, and completely com-pensated [ ] with money." *Maryhouse, Inc. v. Hamilton*, 473 N.W.2d 472, 475 (S.D.1991) (quoting 42 Am.Jur.2d *Injunc-tions* § 49 (1969)).

[¶ 14.] In *Landstrom v. Shaver*, 1997 SD 25, ¶ 41, 561 N.W.2d 1, 9, we noted that SDCL 47–7–34 does not "leave the trial courts with two draconian options of help-lessly dismissing outright a proven cause of action or ordering the dissolution of a corporation[.]" Rather, we held that "a trial court has discretion, within its broad powers of equity, to create an appropriate remedy based on the evidence present-ed.... The statute does not actually man-date liquidation ... but rather provides that the court has this ultimate power to liquidate." (internal citations omitted).

[¶ 15.] In this case, the parties are unable to agree on the management of CBPM. However, this case differs from *Black*, in that Longwell has been shown to have wasted or concealed corporate assets, thus creating the deadlock. CBPM was still functioning without Longwell at the time of the trial. Longwell has offered to sell and Koehler has offered to purchase Longwell's interest in CBPM. There is a pending lawsuit concerning the enforce-ment of the provisions of a buy/sell agree-ment.

[¶ 16.] Under these circumstances, we find that the trial court correctly conclud-ed that Longwell failed to meet his burden of proving that CBPM was threatened with irreparable injury.

## ISSUE THREE

[¶ 17.] **Did the trial court err in concluding that there was no evidence that Koehler acted oppressively.**

[¶ 18.] Longwell's allegations of op-pression arise from his belief that he would have an equal voice in corporate business, his expectation of economic re-ward, and his expectation that Koehler would handle administrative duties well, but in fact, was handling them poorly which caused CBPM to lose money. He emphasizes he was not a minority share-holder, but rather an equal shareholder relegated to a secondary position due to Koehler's control over the financial and administrative aspects of CBPM.

[¶ 19.] "[R]easonable expectations are to be analyzed in light of the entire history of the parties' relationship, and include expectations such as participation in man-

(3) That the shareholders are deadlocked in voting power, and have failed, for a period which included at least two con-secutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(4) That the corporate assets are being mis-applied or wasted.

agement of corporate affairs." *Id.,* 1997 SD 25 at ¶ 39, 561 N.W.2d at 8. In determining reasonable expectations, the trial court must balance a minority shareholder's reasonable expectation against "a corporation's ability to exercise its business judgment and run its business efficiently." *Id.* " 'Mere disappointment in the results of a venture is not sufficient.' " *Id.* When a shareholder's expectations are objectively viewed and are " 'both reasonable under the circumstances and were central to the [ ] decision to join the venture,' " then oppression arises. *Id.* (citations omitted).

[¶ 20.] The trial court found that it was Longwell's conduct that was wrongful, and that the only evidence that corporate assets were being misapplied or wasted stemmed from his conduct. Based on that finding, the trial court concluded there was no evidence that Koehler or CBPM acted illegally, oppressively or fraudulently.

[¶ 21.] It is certainly reasonable to believe that Longwell expected to participate in the management of CBPM. However, the history of the corporation is that Koehler arranged the financing and always managed the day-to-day administration of the business from Spearfish. Rather than asking to participate in the day-to-day management, Longwell demanded that CBPM relocate to Nebraska, hire a Nebraska lawyer and a Nebraska CPA, install a third director of his choice, and renegotiate his compensation agreement.

[¶ 22.] Longwell has failed to establish oppression. All he has established is that he made several demands, which would result in abandoning the current corporate headquarters, altering the management structure, and firing their corporate attorney and CPA. He did not successfully convince his co-equal director and was subjectively disappointed with corporate management. Rejection of these demands is not oppression in light of the history of CBPM.

[¶ 23.] We find that the circuit court correctly concluded that Longwell failed to meet his burden of proving that Koehler acted oppressively.

## ISSUE FOUR

[¶ 24.] **Whether the trial court erred in awarding punitive damages.**

[¶ 25.] Longwell argues that this is a breach of contract action, therefore, the trial court erred in awarding punitive damages. He does not challenge the amount of the award.

■ [¶ 26.] In South Dakota, punitive damages are not recoverable in a breach of contract action. *McKie v. Huntley,* 2000 SD 160, ¶ 9, 620 N.W.2d 599, 602. SDCL 21-3-2 provides that in other cases where the defendant has been guilty of oppression, fraud, or malice, punitive damages may be awarded.

■ [¶ 27.] The trial court concluded that CBPM proved its claims for not only breach of contract, but usurpation of corporate opportunity and conversion. Usurpation of corporate opportunity and conversion are independent torts for which South Dakota law allows punitive damages. *Grynberg v. Citation Oil & Gas Corp.,* 1997 SD 121, ¶ 18, 573 N.W.2d 493, 500. The trial court determined that Longwell usurped CBPM's corporate opportunities and converted corporate assets to his own use.

[¶ 28.] Under the facts of this case, we cannot say that the trial court was clearly erroneous in finding usurpation of corporate opportunity and conversion.

## ISSUE FIVE

[¶ 29.] **Whether Longwell's failure to turn over certain information upon de-**

mand of another shareholder constituted a breach of contract.

[¶ 30.] Longwell argues that since there were only two shareholders and corporate directors who were deadlocked, Koehler was acting without authority when he demanded that he account for corporate assets. Longwell cites no authority for this position. Failure to cite authority waives this argument.[3] *Hart v. Miller*, 2000 SD 53, ¶ 45, 609 N.W.2d 138, 149.

[¶ 31.] Having found for Koehler on all issues, it is not necessary to address the sixth issue raised by Koehler. The judgment of the trial court is affirmed.

[¶ 32.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 33.] ERICKSON, Circuit Judge, for AMUNDSON, Justice, disqualified.

---

**3.** While not presented to the Court, it should be noted that as corporate directors, both Koehler and Longwell have fiduciary duties to each other and are required to exercise good faith in all corporate transactions. *Hayes v. Northern Hills Gen. Hosp.*, 1999 SD 28, ¶ 50, 590 N.W.2d 243, 252. Arguably, responding to a reasonable request from the CEO of the corporation to account for corporate assets and financial data falls within the purview of fulfilling one's fiduciary duties.