2002 SD 150

**Jennie DURKEE, Jennell Sylte, Geneva Durkee and William Fielhaber, Plaintiffs and Appellants,**

v.

**Gerald VAN WELL and Beverly Van Well, Defendants and Appellees.**

**No. 22242.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 2002.

Decided Dec. 4, 2002.

Gordon P. Nielsen of Delaney, Vander Linden, Delaney & Nielsen, Sisseton, South Dakota, Attorneys for plaintiffs and appellants.

John Wiles of Wiles & Rylance, Watertown, South Dakota, Attorneys for defendants and appellees.

ZINTER, Justice.

[¶ 1.] In 1975, Jennie Durkee (Durkee)[1] and Gerald Van Well (Van Well) entered into an oral agreement to relocate a boundary fence that separated their respective properties. The agreement was made after a survey revealed that the fence was located approximately thirty-five feet north of the legally described location on the east-west quarter-section line between the properties. The southerly relocation of the fence would have changed possession of the thirty-five foot strip of land from Durkee to Van Well. In 2000, Van Well removed the old fence and began constructing the new fence on the quarter-section line pursuant to the parties' 1975 agreement. However, before the new fence was completed, Durkee commenced this action to declare the agreement unenforceable under the statute of frauds and to enjoin Van Well from relocating the fence. The trial court held that Van Well's partial performance of the agreement and the doctrine of promissory estoppel removed the agreement from the statute of frauds. Therefore, the trial court denied Durkee's request to enjoin relocation of the fence. Durkee appeals. We affirm.

## FACTS

[¶ 2.] In 1953, Durkee and her late husband acquired property in the south half of a section of land in Codington County. In 1975, Van Well and his wife became interested in acquiring two quarters of land in the north half of the same section. Van Well's property was contiguous to, and directly north of Durkee's property. According to the legal descriptions, an east-west quarter-section line divided a portion of the properties.[2]

---

1. In 1992, Durkee deeded her property to her children Jennell Sylte, Geneva Durkee, and William Fielhaber, reserving for herself a life estate and life interest. Jennie Durkee died *after this action was commenced, but prior to* her deposition. Sylte, Geneva Durkee, and Fielhaber are the remaining plaintiffs/appellants. For ease of reference we refer to these remaining plaintiffs as "Durkee."

2. The legal description of Durkee's property was:

   Southeast quarter and the East half of the Southwest quarter (SE1/4 & E1/2SW1/4), all in Section 21, Township 119 North, of Range 51, West of the Fifth P.M.

   The legal description of Van Well's property was:

   The Northeast Quarter (NE1/4) of Section 20, less the right-of-way of St. Paul, Minneapolis and Manitoba Railway Company,

[¶ 3.] Before Van Well completed the purchase of his property, he hired an engineering company to survey his parcel. The survey revealed that the boundary fence between the two properties was located approximately thirty-five feet north of the legally described boundary on the east-west quarter-section line. Upon making this discovery, Van Well discussed the survey and a proposed relocation of the misplaced fence with Durkee. Durkee and Van Well agreed to leave the fence as it stood until it needed to be replaced. They agreed that when it became necessary to replace the fence, Van Well would move it thirty-five feet south to the east-west quarter-section line as provided in the legal descriptions.[3] They also agreed that each party would pay an equal share of the cost of reconstructing the new boundary fence. They finally agreed that, although the incorrectly located fence prevented Van Well's immediate use and possession of the southerly thirty-five feet of his property, he would maintain the existing fence and would pay the real estate taxes on the strip of property. This agreement allowed Durkee to continue to have the use and benefit of the thirty-five foot strip of land, tax free, until Van Well relocated the fence.

[¶ 4.] In 1982, Van Well had the property resurveyed in preparation to move the fence. At the same time, Durkee first sought legal advice about her rights to the thirty-five foot strip of property. Durkee was advised by an attorney that she had already acquired legal title to the property by adversely possessing it from 1953 until 1975. She did not however relay that information to Van Well. Coincidentally, Van Well abandoned his plan to replace the fence at that time because of economic circumstances.

[¶ 5.] In 2000, Van Well began preparations to move the fence again. At that time the property was resurveyed, Van Well removed the original fence, and he began constructing the new fence on the east-west quarter-section line. After Van Well had constructed almost one-half of the new fence, Durkee filed a complaint seeking to enjoin Van Well from relocating the fence. Van Well counterclaimed for enforcement of the 1975 agreement to move the fence. Van Well also sought damages for one-half the cost of relocating the fence.

[¶ 6.] In pre-trial rulings, the trial court denied Durkee's motion for summary judgment on her request for injunctive relief and denied Durkee's request for a jury trial. The trial court then conducted a court trial that was limited to Durkee's request for injunctive relief and the underlying equitable issues. Following the court trial, the court ruled that Durkee had acquired the disputed property by adverse possession by occupying the fenced property from 1953 to 1975.[4] The trial

(now Great Northern Railway Company) and all that part of the North Half of Section 21 lying South of South Dakota Highway No. 20, except that part thereof platted as "Hansen Addition to the County of Codington", all in Township 119 North, of Range 51, West of the Fifth Principal Meridian.

3. In 1975, Van Well also discussed this problem with Isabel Lapenick, another neighbor who shared an extension of this boundary fence with Van Well's property. In 2000, Van Well moved the fence between his property and Lapenick's property to the east-west quarter-section line without apparent objection.

4. Neither party has raised the question whether Durkee's failure to judicially establish her claim to adverse possession prior to 2000 had any effect on her current claim of ownership. We therefore assume, without deciding, that Durkee had acquired ownership of the disputed property by 1975.

court also found that the 1975 oral agreement existed between Durkee and Van Well. Although that agreement did not comply with the writing requirement of the statute of frauds, the trial court concluded that Durkee was estopped from asserting that defense. The court concluded that Durkee was estopped because (1) Van Well had reasonably and detrimentally relied on the oral agreement, and (2) Van Well had partially performed the oral agreement by maintaining the original fence and by paying the property taxes after 1975.

[¶ 7.] On appeal to this Court, Durkee raises five issues, four of which we address.

1. **Whether the trial court erred in denying Durkee's motion for summary judgment.**

2. **Whether the trial court erred in denying Durkee's request for a jury trial.**

3. **Whether the trial court erred in finding that a 1975 oral agreement existed between the parties.**

4. **Whether the trial court erred in determining that promissory estoppel and partial performance removed the oral agreement from the statute of frauds.**

## DECISION

[¶ 8.] **1. Durkee was not entitled to summary judgment.**

[¶ 9.] Durkee argues that the trial court erred in denying her motion for summary judgment. We disagree for two reasons. First, considering Van Well's evidence regarding the existence of the 1975 oral agreement, Van Well raised genuine issues of disputed fact that precluded summary judgment. The disputes of fact were material to the existence of an oral contract, as well as Van Well's related defenses of promissory estoppel and partial per-

formance. Second, even if there were no disputed issues of material fact relating to these issues, Durkee suffered no prejudice because the trial court fully considered, but ultimately rejected all of Durkee's claims on the merits at trial. Because the trial court correctly determined that Durkee was not entitled to relief on the merits, she could not have been prejudiced by an earlier denial of her motion for summary judgment on the same claims.

[¶ 10.] **2. The trial court correctly refused Durkee's request for a jury trial.**

[¶ 11.] Although Durkee did not demand a jury trial in her pleadings, Durkee argues that she was entitled to a jury trial because Van Well's counterclaim requested a jury trial on Van Well's claim for damages. The trial court, however, bifurcated the equitable issues for a trial to the court, and the legal claims for a trial by jury. The trial court ruled that it would try Durkee's claim for an injunction along with the incidental equitable issues involving promissory estoppel, partial performance, specific performance, and the statute of frauds. The trial court further ruled that if Van Well prevailed on these equitable issues, the court would then grant Durkee a jury trial on Van Well's legal claim for damages. This procedure followed our settled law on the right to jury trial in cases seeking both equitable and legal relief.

[¶ 12.] We have often noted that the right to a jury trial does not exist in all civil cases. *Nizielski v. Tvinnereim*, 453 N.W.2d 831, 833 (S.D.1990). "In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion." *Id.* at 833 (citing *Skoglund v. Staab*, 312 N.W.2d 29 (S.D.1981)). In determining whether the action arises at law or in equity, we look to the pleadings,

including the complaint, answer, cross-complaint and prayer for relief. *Id.* (citing *Arlt v. Langley,* 56 S.D. 79, 227 N.W. 469, 473 (1929)).

■ [¶ 13.] Here, the pleadings and prayer for relief reflect that Durkee was seeking injunctive relief for which there was no right to trial by jury. Injunction is an equitable remedy for which Durkee was not entitled to trial by jury. *Metropolitan Life Insurance Co. v. Jensen,* 69 S.D. 225, 230, 9 N.W.2d 140, 142 (1943). Moreover, Durkee's right to injunctive relief was dependent upon equitable or incidental legal claims for which there was no right to jury trial. *See Skoglund v. Staab,* 312 N.W.2d 29, 31 (action for specific performance is equitable); *Valley Bank v. Dowdy,* 337 N.W.2d 164, 165 (S.D.1983) (promissory estoppel involves equitable relief); *Crawford v. Carter,* 74 S.D. 316, 319, 52 N.W.2d 302, 304 (1952) (a court of equity may exercise its power where there has been a part performance); *Owens v. Moyes,* 95 SD 211, ¶ 6, 530 N.W.2d 663, 665 (the existence of a valid express contract is a question of law to be determined by the court, not a jury). Therefore, the trial court correctly tried the equitable and incidental legal claims, while leaving the claim for damages for a jury.

[¶ 14.] **3. A 1975 oral agreement existed between the parties.**

■ [¶ 15.] Durkee argues that the 1975 oral agreement was invalid because there was no "meeting of the minds," and therefore, there was no consent to the agreement. Durkee contends that the parties believed they were only consenting to relocate a fence, but not to transferring ownership of real property. In support of this contention, Durkee points out that at the time of the 1975 agreement, she did not know that she had already acquired the property by adverse possession. Consequently, Durkee concludes that her consent to the agreement was voidable due to a mistake of law. However, we conclude that even if the agreement was voidable due to Durkee's mistake of law, she subsequently ratified the agreement by her conduct after she discovered her right to claim the property by adverse possession.

[¶ 16.] SDCL 53–4–1 provides that: "apparent consent is not real or free and is voidable when obtained through . . . [m]istake." A mistake of a law:

> . . . in relation to consent to contract constitutes a mistake [of law] resulting in voidable consent only when it arises from:
>
> (1) A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or
>
> (2) A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify.

SDCL 53–4–10.

■ [¶ 17.] However, even if the 1975 agreement was voidable due to mistake of law (a question which we need not decide[5]) a party may subsequently ratify such an agreement. SDCL 53–3–4 provides that a contract that is voidable for want of consent may nevertheless be ratified by subsequent consent. Moreover, ratification may be express or implied by conduct. *First State Bank of Sinai v. Hyland,* 399 N.W.2d 894, 898 (S.D.1987) (further citations omitted). Implied ratification by conduct may occur when a party fails to disaffirm a contract over a period of time. Such a failure to act may, by itself, ripen into a ratification, especially if

---

5. We do not address the question whether "all parties" or "one party" misapprehended the law within the meaning of SDCL 53–4–10 because neither party has briefed that question, and because we conclude that Durkee ratified any "voidable" agreement.

rescission would result in prejudice to the other party. *Id.* (further citations omitted).

[¶ 18.] Here, Durkee apparently learned of her claim to adverse possession in 1983. Nevertheless, she failed to make any claim to the property, and she failed to take any action to disaffirm or rescind the 1975 agreement for seventeen years after her discovery of her legal rights. Yet during those years, Durkee allowed Van Well to continue to pay the taxes, maintain the fence, and forego his claim to use of the property all in detrimental reliance on the 1975 agreement. Under these circumstances, Durkee's failure to disaffirm the agreement for seventeen years after her discovery of her right to ownership of the land by adverse possession constituted ratification of any voidable consent.[6] *See generally, First State Bank,* 399 N.W.2d at 898.

[¶ 19.] **4. The trial court correctly ruled that promissory estoppel and partial performance removed the oral agreement from the statute of frauds.**

[¶ 20.] Durkee points out that she was in possession of the disputed property for over twenty years before Van Well purchased his land, and the trial court ruled that Durkee acquired the disputed strip by adverse possession before the 1975 agreement. Consequently, Durkee argues that the 1975 oral agreement to transfer her interest in that real property was unenforceable under the statute of frauds.[7]

[¶ 21.] The statute of frauds generally requires a written contract for the transfer of an interest in real estate. SDCL 53–8–2 sets forth that general rule and an exception for partial performance.

The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing: . . .

(3) An agreement for sale of real estate or an interest therein[.] . . . However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof[.]

SDCL 53–8–2(3). In addition to this statutory exception for partial performance,

---

6. Durkee also raises a failure of consideration argument for the first time in her reply brief. Because it is improperly first raised in Durkee's reply brief, Van Well has not had an opportunity to address the issue. Nevertheless, we believe that Van Well's obligations under the agreement, including the payment of the taxes, constituted sufficient consideration.

7. Durkee also points out that the only evidence of the agreement was the testimony of Van Well. The trial court ruled that Van Well could testify to the details of the oral agreement pursuant to SDCL 19–16–32 (Rule 804(b)(3)), which permits hearsay testimony concerning an admission against interest.

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far

tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true, is not excluded by § 19–16–4 if the declarant is unavailable as a witness. . . .

SDCL 19–16–32 (Rule 804(b)(3)). Although *Durkee argues that Van Well's testimony* concerning the oral agreement should be disregarded, Durkee fails to address the testimony's admissibility under Rule 804(b)(3), and Durkee fails to cite authority supporting her contention that the trial court erred in this evidentiary ruling. Durkee has waived this argument on appeal. *Longwell v. Custom Benefit Programs Midwest, Inc.,* 2001 SD 60, ¶ 30, 627 N.W.2d 396, 401.

promissory estoppel is another exception to the statute of frauds.

> An oral promise to convey real property is enforceable by specific performance where the grantee *has partially performed* or *has acted in reliance upon the promise* of the grantor in such a manner that it would invoke a fraud or prejudice against the grantee not to grant specific performance thereon.

*Matter of Estate of Gosmire*, 331 N.W.2d 562, 567 (S.D.1983) (citing *Bentz v. Esterling*, 76 S.D. 331, 78 N.W.2d 73 (1956))(emphasis added).

[¶ 22.] The trial court held that this "doctrine of promissory estoppel[8] and ... [Van Well's] partial performance of the 1975 oral agreement ... [made] the Statute of Frauds inapplicable." We agree.

[¶ 23.] Promissory estoppel and estoppel based on partial performance have similar elements. The elements of promissory estoppel require a promise, and that:

> ... a promisee alters his position to his detriment in the reasonable belief that a promise would be performed. To apply the doctrine of promissory estoppel, the trial court must find: 1) the detriment suffered in reliance must be substantial in an economic sense; 2) the loss to the promisee must have been foreseeable by the promisor; and 3) the promisee must have acted reasonably in justifiable reliance on the promise made.

*Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 848 (S.D.1990)(internal citations omitted). The elements of estoppel based on partial performance are:

(a) [an] oral agreement must be established by satisfactory evidence;

(b) the party asserting rights under the agreement must have relied thereon and have indicated such reliance by the performance of acts unequivocably [sic] referable to the agreement; and

(c) it must appear that because of his change of position in reliance on the agreement, to enforce the statute [would] subject such party to unconscionable hardship and loss.

*Williams v. Denham*, 83 S.D. 518, 522, 162 N.W.2d 285, 287 (1968).

[¶ 24.] Here, the elements of promissory estoppel were established. First, there was an oral agreement or promise. Van Well testified that before he purchased the property, he and Durkee agreed that when the fence needed to be replaced, Van Well could move the fence to the quarter-section line. The trial court found these as facts, and Durkee has not established that the trial court was clearly erroneous.

[¶ 25.] Second, the potential detriment to Van Well was substantial in an economic sense. Under the agreement, Durkee was allowed to continue to use the thirty-five foot strip of land without paying rent or taxes on the property. For twenty-five years, Van Well maintained the existing fence and paid those taxes. He testified that he did so in reliance on the agreement so that he would obtain possession of the approximately two-acre strip of land when the fence was relocated. All potential detriments to Van Well were substantial.

---

**8.** Durkee extensively briefs the assertion that "equitable estoppel," as applied in *Cooper v. James*, 2001 SD 59, ¶ 16, 627 N.W.2d 784, 789, is not applicable here. However, the trial court did not apply the doctrine of equitable estoppel. Instead, the trial court applied promissory estoppel. We do not consider an equitable estoppel argument that was neither raised nor ruled on by the trial court. *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 110 (S.D.1994).

[¶ 26.] Third, those detriments or losses were foreseeable to Durkee. When Van Well first attempted to exercise his right to move the fence in 1983, Durkee sought advice and discovered that she had a legal claim to the property by adverse possession. However, Durkee did not inform Van Well of her realization. Although Van Well began plans to replace the fence in 1983, Durkee kept the status of the land to herself. As a result of Durkee's silence and the 1975 agreement, Durkee knew that Van Well would continue to pay the taxes, while Durkee continued to use the property for another seventeen years. Thus, Van Well's payment of the taxes and his loss of use of the property were foreseeable to Durkee. It was also foreseeable that Van Well would be financially harmed by his initial purchase of the property unless Durkee abided by the agreement to relocate the fence when it needed to be reconstructed.

[¶ 27.] Fourth, Van Well acted "reasonably in justifiable reliance" on Durkee's promise. Both parties knew that the fence was not located on the quarter-section line, yet Van Well was paying the taxes. Under those circumstances, it was reasonable for Van Well to rely on Durkee's agreement that the fence would be relocated to the correct location described in the deeds when it needed to be rebuilt. Based on all of the foregoing facts, the trial court was clearly justified in concluding that the elements of promissory estoppel were present.

[¶ 28.] Durkee was also estopped from asserting the statute of frauds defense because Van Well partially performed his part of the agreement. First, Van Well and Durkee made an agreement to relocate the fence. Second, there is no dispute that in reliance on that agreement, Van Well fully performed his part of the agreement to leave the fence in its existing location until the fence needed to be replaced. In further reliance on the agreement, Van Well also maintained the fence; paid the property taxes on the disputed property; allowed Durkee full use and benefit of the land for twenty-five years; and, eventually, when the fence needed to be replaced, Van Well removed the old fence and reconstructed almost one-half of the new fence before Durkee objected. Finally, under these circumstances an "unconscionable hardship and loss" would befall Van Well if the agreement were not enforced. *Id.* If the agreement were not enforced, Van Well stood to lose approximately two acres of land, the taxes he had paid, the cost of maintaining the fence, and the loss of the use of the property since 1975. Therefore, Van Well's partial performance of the agreement was an additional ground to preclude application of the statute of frauds.

[¶ 29.] For all of the foregoing reasons, we affirm the trial court on all issues.

[¶ 30.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 31.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.